UNITED STATES of America, Plaintiff,

v.

James F. McCRACKIN, Defendant.

**Civ. A. No. 4:88–3125–15.**

United States District Court,
D. South Carolina,
Florence Division.

April 13, 1990.

Henry D. Knight, Jr., Asst. U.S. Atty., Columbia, S.C., for plaintiff.

E. Windell McCrackin, McCrackin, Barnett & Richardson, Myrtle Beach, S.C., for defendant.

## ORDER

HAMILTON, District Judge.

The United States of America (government) seeks reimbursement of the educational cost required to enroll James F. McCrackin (McCrackin) at the United States Air Force Academy (Academy) for three years because of the administrative determination that McCrackin was ineligible to fulfill his active duty service commitment (ADSC) upon his resignation from the Academy on May 16, 1985. The matter is before the court upon cross-motions for summary judgment. Rule 56, Fed.R.Civ. Proc. The court has concluded that the government's motion for summary judgment should be granted.

The instant action arises out of McCrackin's appointment to the Academy in 1982. As a prerequisite to admission to the Acad-

emy, McCrackin signed a "Statement of Understanding," which provided:

## STATEMENT OF UNDERSTANDING

I agree as a condition of receiving advanced education as defined in Title 10, United States Code, Section 2005:

(1) to complete the educational requirements specified in this agreement and to serve on active duty for the period specified in this agreement, and

(2) that if I fail to complete the specific educational requirements, I will serve on active duty for the specified period, and

(3) that if I voluntarily or because of misconduct, fail to complete that period of active duty, I will, as specified by the Air Force, reimburse the United States for the percentage of the cost of my education which the period not served on active duty is of the specified period, and

(4) that only the Secretary of the Air Force or his designee may excuse me from my obligations to serve on active duty for the period specified in this agreement.

Defendant's Motion for Summary Judgment (Defendant's Motion), Exhibit 2. Under the terms of the Statement of Understanding, if a cadet voluntarily or because of misconduct failed to complete his or her ADSC, the Air Force could require reimbursement of education costs incurred by that cadet.

On May 9, 1985, McCrackin received a letter from Brigadier General Marcus A. Anderson, the Commandant of Cadets at the Academy. In this letter, General Anderson accused McCrackin of using marijuana, maintaining under oath that he had not used marijuana, and failing to report a fellow cadet's use of marijuana as required by the Academy Honor Code. McCrackin was also informed that action would be instituted against him "with a view of affecting [his] separation from cadet status." Defendant's Motion, Exhibit 11.

Rather than contest disenrollment under Section E, Air Force Regulation (AFR) 53–3, McCrackin tendered his resignation from appointment to the Academy on May 16, 1985, after consultation with appointed counsel, Captain Scott W. Singer. McCrackin tendered his resignation with the "understanding that a recommendation will be made to the Secretary of the Air Force that [his] active-duty service commitment be waived." Defendant's Motion, Exhibit 4. McCrackin executed a second "Statement of Understanding" on May 21, 1985, in which he requested a delay in his call to active duty to permit completion of undergraduate degree requirements at a civilian college or university. Defendant's Motion, Exhibit 5. McCrackin was also granted testimonial immunity to secure his truthful testimony in a military justice action involving Cadet Third Class Andrew F. Smith. Defendant's Motion, Exhibit 17. Apparently, McCrackin was also promised an honorable discharge in exchange for his cooperation.

On May 23, 1985, Lieutenant General Winfield W. Scott, Jr., Academy Superintendent, recommended to the Secretary of the Air Force (Secretary) that Cadet McCrackin be discharged under honorable conditions and that his ADSC be waived. Because McCrackin did not meet the standards for enlisted status, according to General Scott, he also recommended that McCrackin be required to reimburse the government for the cost of his three years at the Academy. Defendant's Motion, Exhibit 12. The Secretary accepted McCrackin's resignation in July 1985. He also directed that McCrackin "reimburse educational costs in accordance with Title 10, United States Code, Section 2005 and the Statement of Understanding [McCrackin] signed on April 15, 1982." Defendant's Motion, Exhibit 13. On October 4, 1985, McCrackin's indebtedness for three years at the Academy was calculated at $41,-064.50. The Air Force subsequently deducted $807.85 from McCrackin's final pay and credited this amount against the government's claim for reimbursement of educational costs.

The government brings the present action seeking reimbursement for $41,064.50. McCrackin has counterclaimed for the

amount deducted from his pay, $807.85. The parties have filed cross-motions for summary judgment. In his motion for summary judgment, McCrackin alleges that the terms of his appointment contract require the Secretary to order him to active duty *prior to* requiring reimbursement. McCrackin also contends the Secretary has waived the defendant's ADSC. He also argues that the Secretary should be estopped from collecting educational costs, allegedly because of advice by counsel which caused him to take action to his detriment. Specifically, McCrackin alleges that counsel did not advise him of the consequences of waiving his ADSC, and, in addition, that Captain Singer should not have been appointed as his attorney.[1] McCrackin also contends that reimbursement should not be required because he was eligible for enlistment at the time of the Secretary's determination. Finally, McCrackin urges the court to exclude the Declarations of Lieutenant Colonel George J. Guyer (Guyer), November 30, 1989, and Captain Scott W. Singer (Singer), December 7, 1989, because they are not "sworn to" as allegedly required by Rule 56(e), Fed.R.Civ.Proc., and also contends that a letter of May 16, 1985, produced by the government, should be excluded on grounds that it is not properly authenticated.

In support of its cross-motion for summary judgment, the government asserts that both the controlling statute, 10 U.S.C. § 2005(a)(3), and the Statement of Understanding signed by McCrackin on April 15, 1982, require reimbursement of education costs. The government also contends that considerable deference should be accorded to the Secretary's policy to require reimbursement only where a cadet fails to complete his or her ADSC voluntarily or because of misconduct. The Secretary's policy to require reimbursement when he determines that cadets are not qualified for active duty, according to the government, is also consistent with the intent of Congress when § 2005 was added to Title 10 in 1980. The government also maintains that equitable estoppel is not applicable under the present facts and circumstances, noting that the Secretary would have ultimately determined McCrackin was ineligible to fulfill his ADSC, and thus required reimbursement, even if McCrackin had not resigned but rather had been separated from cadet status under Section E, AFR 53–3. Additionally, the government argues that a government agency is not equitably estopped absent a showing of "affirmative misconduct."

■ As a threshold matter, the court must address McCrackin's contentions under Rule 56(e), Fed.R.Civ.Proc. That provision requires that "[s]upporting and opposing affidavits [ ] be made on personal knowledge, [ ] set forth such facts as would be admissible in evidence, and [ ] show affirmatively that the affiant is competent to testify to the matters stated therein." The following paragraph is contained in both declarations:

> I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Declaration of Lieutenant Colonel George J. Guyer, para. 10, November 30, 1989; Declaration of Scott W. Singer, para. 5, December 7, 1989. The court concludes that the form of these declarations complies with both the letter and spirit of Rule 56(e). *See* 28 U.S.C. § 1746. Addressing the issue of the May 16, 1985, letter, it suffices to say that McCrackin has produced the identical letter as an exhibit to his motion. In any event, the declarations of Guyer and Singer, as well as the contested letter, are not material to the court's determination in this matter.

---

1. McCrackin's contention that Captain Singer should not have been appointed as counsel is summarily rejected by the court. Although McCrackin objected to the appointment of Captain Babinski as his counsel, he never objected to Captain Singer's subsequent appointment at any stage of the administrative proceedings. Also, Captain Singer did not serve as "hearing officer" in any Section E disenrollment proceeding because no such hearing ever occurred in McCrackin's case. Rather, McCrackin resigned and agreed to cooperate with Academy officials in lieu of contesting the allegations.

■ The statutory authority for the Secretary's decision to require reimbursement from McCrackin is found in 10 U.S.C. § 2005, which provides:

§ 2005. Advanced education assistance: active duty agreement; reimbursement requirements

(a) The Secretary concerned may require, as a condition to the Secretary providing advanced education assistance to any person, that such person enter into a written agreement with the Secretary concerned under the terms of which such person shall agree—

(1) to complete the educational requirements specified in the agreement and to serve on active duty for a period specified in the agreement;

(2) that if such person fails to complete the education requirements specified in the agreement, such person will serve on active duty for a period specified in the agreement;

(3) that if such person, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement, such person will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided such person as the unserved portion of active duty bears to the total period of active duty such person agreed to serve; and

(4) to such other terms and conditions as the Secretary concerned may prescribe to protect the interest of the United States.

. . . . .

(c) Subject to the provisions of subsection (d) of this section, the obligation to reimburse the United States under an agreement described in subsection (a) of this section is, for all purposes, a debt owing the United States.[2]

In addition to express statutory authorization to require reimbursement, § 2005 also authorizes the Secretary to have each cadet sign a Statement of Understanding, which includes, among other things, an ADSC obligation if a cadet fails to complete the specific educational requirements, and the reimbursement obligation if a cadet, voluntarily or because of misconduct, fails to complete his or her ADSC. Defendant's Motion, Exhibit 2. Apparently, the reimbursement provision of AFR 53–3, which is congressionally authorized in § 2005, is triggered in cases where, as here, the nature of the cadet's misconduct acts as a bar to enlistment and renders him ineligible to serve on active duty. The Office of the Secretary considers the facts in each case to determine whether a cadet is qualified to serve on active duty as an enlisted member.[3]

■ The Secretary's policy to require reimbursement when he or she reasonably believes a separated cadet is ineligible to fulfill the ADSC is also consistent with the intent of Congress when § 2005 was added to Title 10 in 1980. *See* S.Rep. No. 96–850,

---

**2.** Section 2005 was amended in 1983, and under subsection (f)(1), "the Secretary will have the option to order [R.O.T.C. Cadets] to reimburse the United States in the manner provided for in clause (3) of such subsection without the Secretary first ordering such person to active duty as provided for under clause (2). . . ." By its express terms, however, this provision applies only to R.O.T.C. Cadets, and not Cadets enrolled at United States Military Academies. Thus, subsection (a)(3) remains the operative provision where an academy cadet voluntarily or because of misconduct fails to fulfill his or her ADSC. Because the court has concluded that the plain and unambiguous language of subsection (a)(3) requires reimbursement under the present facts and circumstances, the court need not reach McCrackin's argument that the addition of the 1983 amendment demonstrates that the Secretary cannot require reimbursement in the case of academy cadets. Indeed, the amendment itself is not even addressed to agreements executed by academy cadets.

**3.** Significantly, AFR 53–3(C3)8.a.(1)(d) provides that each "separating cadet may submit a written request stating the reasons active duty commitment, and/or reinstatement, should be waived. This request, together with the recommendation of the Superintendent is forwarded to the Secretary of the Air Force for final action consistent with the best interests of the Force." McCrackin has not demonstrated that he availed himself of this administrative opportunity to be heard, and thus arguably has waived his right to subsequently attack the Secretary's ultimate determination.

96th Cong., 2d Sess. (1980) (Senate Report), U.S.Code Cong. & Admin.News 1980, 2833. The legislative history states that, before the enactment of § 2005, the Secretary lacked

> the authority to recover, in whole or in part, the expense of the education received by that person who fails to complete his course of education or his active duty obligation. This has led to situations in which the United States does not receive a fair return on its investment. . . .

*Id.* at 8, U.S.Code Cong. & Admin.News 1980, 2840. The report also reveals the purpose behind enactment of § 2005:

> The purpose of the legislation is to add a new Section 2005 ... to authorize the Secretary concerned to require an applicant for certain advanced education by the armed forces to agree in writing to serve on active duty for a specified period or reimburse the United States for the cost of the education. . . .

> If the applicant voluntarily or because of misconduct does not serve on active duty for the specified period and unless recovery were waived by the Secretary ... the applicant will reimburse the United States for that percentage of the cost of the education that his unfulfilled active duty obligation is of the total service obligation incurred as a result of that education. . . .

*Id.* at 7, U.S.Code Cong. & Admin.News 1980, 2839. Accordingly, it is clear that the Secretary's policy is consistent with § 2005 and the legislative history behind that provision.

It is also universally recognized, as noted by the plaintiff, that considerable deference is to be accorded to the military to resolve "uniquely military matters," such as the type of personnel decisions at issue pres-ently. *Cf. Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Gilligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1945). This policy is similar to the deference accorded administrative determinations generally. As stated by the Supreme Court:

> The Secretary's interpretation may not be the only one permitted by the language of the [regulations], but it is quite clearly a reasonable interpretation; courts must therefore respect it.

*Udall v. Tallman,* 380 U.S. 1, 4, 85 S.Ct. 792, 795, 13 L.Ed.2d 616 (1964). Thus, assuming the Secretary's determination is a reasonable interpretation of the applicable regulations, this court is precluded from reevaluating the issue of whether McCrackin was eligible for enlistment at the time of the Secretary's determination.

AFR 30–2, para. 3–2, promulgated on June 22, 1981, and in effect when McCrackin was discharged, provided Air Force policy on illegal drug use:

> The Air Force objective is to maintain standards of behavior, performance, and discipline necessary for completing the mission. The illegal or improper use of drugs by Air Force members can seriously damage physical and mental health; may jeopardize their safety and the safety of others; and can lead to criminal prosecution and discharge under other than honorable conditions. Drug abuse is not compatible with Air Force standards. . . .

"Drug abuse" is defined in the same regulation as "[a]ny illegal or improper use or possession, sale, transfer, or introduction on a military installation of drugs. . . ." *Id.,* para. 3–2(c)(5).[4]

---

4. McCrackin's reliance on regulations which govern enlistment of recruits with no previous military experience has no application to cadets who are disenrolled or voluntarily separated from their Academy appointment because of misconduct. First, the premise of McCrackin's argument, that a separated cadet is entitled to the same treatment as an enlisted recruit, does not necessarily follow from the practical considerations involved in deciding whether a separat-ed cadet should be permitted to serve his or her ADSC. For instance, in addition to McCrackin's alleged marijuana use, the Secretary also was constrained to consider his alleged lying under oath and refusal to report illegal activity by a fellow cadet. All of these considerations are relevant to the determination of whether McCrackin was fit for enlisted service. Indeed, arguably the allegations going to McCrackin's truthfulness and veracity are more relevant

In the present case, the Secretary's determination that McCrackin was ineligible to fulfill his ADSC was a reasonable discretionary decision which will not be disturbed by this court. The allegations against McCrackin, which included charges of illegal drug use and lying under oath, were not contested by McCrackin under the procedures governing disenrollment proceedings under Section E, AFR 53–3. Rather, he chose to resign and not contest the allegations. For purposes of the Secretary's decision, however, these allegations were necessarily the basis from which any decision as to McCrackin's fitness to fulfill his ADSC had to be evaluated. Under the facts and circumstances of the present case, the Secretary's decision to elect reimbursement is supported by § 2005, its legislative history, and regulations promulgated pursuant to that provision. Accordingly, McCrackin's argument that reimbursement is not authorized under these circumstances must be rejected.[5]

 Notwithstanding the clear and unambiguous application of § 2005 and the applicable regulations to the present case, McCrackin nonetheless argues that the government should be equitably estopped from collecting the cost of educating McCrackin for three years at the Academy. Initially, as noted by the government, it would be erroneous to conclude that McCrackin's counsel, Captain Singer, was vested with authority sufficient to usurp the statutory authority of the Secretary to enforce agreements entered into pursuant to § 2005. *See United States v. Vonderau*, 837 F.2d 1540 (11th Cir.1988) (government not estopped from collecting indebtedness because of V.A. employee's oral assurances); *United States v. Killough*, 848 F.2d 1523 (11th Cir.1988) (government not estopped from bringing civil action under False Claims Act despite alleged promise by Assistant United States Attorney to take no further action if individuals pled guilty and fully cooperated). In any event, the doctrine of equitable estoppel is only available where the allegedly injured party is ignorant of the true facts. *Preferred Risk Mutual Ins. Co. v. Thomas*, 372 F.2d 227, 230 (4th Cir.1967); *Lavin v. Marsh*, 644 F.2d 1378, 1382 (9th Cir.1981). Application of equitable estoppel to restrain administrative action against an individual also requires a showing of "affirmative misconduct" on the part of the agency. *Lavin*, 644 F.2d at 1382.

Neither of these prerequisites to the application of estoppel is present here. As an initial matter, McCrackin can reasonably be charged with the knowledge of the Statement of Understanding he signed on April 15, 1982. To hold otherwise would render such agreements unenforceable whenever a party has subjectively failed to remember his obligations thereunder. Moreover, McCrackin's allegation that Captain Singer failed to advise him of the consequences of waiving his ADSC falls far short of establishing "affirmative misconduct" on the part of the Air Force. In any event, the Secretary had the authority under the present circumstances to seek reimbursement—regardless of any purported "election of options" McCrackin intended to make after his resignation. Put simply, the doctrine of equitable estoppel has no application in the present case.

McCrackin received the benefit of nearly three years of college education at the taxpayers' expense. The Secretary's determination to seek reimbursement due to McCrackin's failure to complete his ADSC is well supported by § 2005, its legislative history,[6] and the applicable regulations.

than his alleged drug use. Under these circumstances, a blind application of "waiver" rules for new recruits is not appropriate.

5. McCrackin's argument that the Secretary somehow "waived" his right to seek reimbursement must also be rejected by the court. In short, the Secretary's decision to seek reimbursement in lieu of ordering an allegedly unfit cadet to complete his ADSC constituted an election of alternatives under the statute and Statement of Understanding, and not a waiver of either statutory option. *See* Senate Report, *supra* p. 112, at 7, U.S.Code Cong. & Admin.News 1980, 2839.

6. The Senate Report lists several instances where the government failed to receive a fair return on its investment prior to the enactment of § 2005. See Senate Report, supra p. 112, at 8, U.S.Code Cong. & Admin.News 1980, 2840.

**114**

Accordingly, the court is constrained to grant the government's motion for summary judgment. Defendant's motion for summary judgment is denied. Rule 56, Fed.R. Civ.Proc.

The Clerk is directed to enter judgment in favor of the plaintiff, United States of America, and against the defendant, James F. McCrackin, in the amount of forty-one thousand sixty-four and 50/100 ($41,064.50) Dollars.[7] The Clerk is also directed to enter judgment in favor of the plaintiff, United States of America, and against the defendant, James F. McCrackin, on the defendant's counterclaim.

IT IS SO ORDERED.

---

7. The total cost of McCrackin's Academy education is not disputed. *See* Declaration of Ronald L. Latreille, February 22, 1990, para. 2.