**UNITED STATES of America, Plaintiff,**

**v.**

**Charles C. GEARS, Jr., Defendant.**

**No. S92–732M.**

United States District Court,
N.D. Indiana,
South Bend Division.

Oct. 26, 1993.

Clifford D. Johnson, Asst. U.S. Atty., South Bend, IN, Orest S. Szewciw, Asst. U.S. Atty., Dyer, IN, for plaintiff.

Robert W. Mysliwiec, South Bend, IN, for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

On September 23, following hearing, the court denied cross-motions for summary judgment, finding varying inferences permissible from largely undisputed facts. *See Glass v. Dachel*, 2 F.3d 733, 740 (7th Cir. 1993). The parties agreed to submit the case for decision on the summary judgment record, with supplemental briefing. This memorandum is intended to satisfy the court's obligations under Fed.R.Civ.P. 52(a). The case involves the government's claim for reimbursement of education expenses against a former United States Naval Academy midshipman. For the reasons that follow, the court finds for the defendant, the former midshipman.

### I. FACTS

Defendant Charles Gears, Jr. enlisted in the United States Navy in 1982. In 1985, while still enlisted in the Navy, Mr. Gears applied for and was accepted into the United States Naval Academy ("Academy"). Before entering the Academy, Mr. Gears executed an "Agreement to Serve and Degree Requirements for All Midshipman Who are Citizens or Nationals of the United States" ("Agreement"), which provided, among other things:

It is further agreed as a condition to receiving advanced education assistance, as these terms are defined in Title 10 U.S.Code Annotated, Section 2005(e)(1), (2), that should I voluntarily or because of misconduct fail to complete the applicable period of active duty incurred as the result of graduation or disenrollment, I will, if required by regulation, reimburse the United States for the cost of the education received at the Naval Academy in an amount that bears the same ratio to the total cost of the education provided me as the unserved portion of active duty bears to the total period of active duty for which I hereby agree to serve.

On November 9, 1988, the Brigade Military Performance Board ("BMPB") recommended to the Commandant of Midshipmen that Mr. Gears be disenrolled from the Academy because of his non-compliance with the Academy's weight standards and his less than satisfactory performance in physical education and military performance. The BMPB also recommended that Mr. Gears be assigned to three years active duty following disenrollment. The Commandant placed Mr. Gears in a probationary status, and ordered him to reduce his weight below 200 pounds and complete all physical education tests. Mr. Gears' inability to comply with this order served as the basis for the Commandant's January 10, 1989 recommendation to the Academic Board that Mr. Gears be disenrolled from the Academy and, further, that he not be assigned to active duty.

In March 1989, during his first class year (his fourth academic year at the Academy), based upon the Academic Board's unanimous recommendation, the Academy Superintendent recommended Mr. Gears' discharge from the Academy based upon a finding of "insufficient aptitude to become a commissioned officer in the Naval service." The Academic Board based its finding of insufficient aptitude on the following grounds:

(1) Midshipman Gears has been outside prescribed weight standards throughout most of his time at the Naval Academy. His non-compliance with the Naval Academy weight standards reflects a lackluster attitude toward maintaining an effective weight reduction program.

(2) Midshipman Gears has been unable to meet the Naval Academy's minimum physical education requirements. His inability to conform to the Academy's physical fitness standard was the catalyst which resulted in his MPS [Military Performance School] failure.

As part of the disenrollment process, Mr. Gears had the right to submit a "show cause statement" to the Secretary of the Navy. *See* 10 U.S.C. § 6962(b). Mr. Gears declined to exercise this right. Based upon the Academy Superintendent's recommendation, the Secretary of the Navy "discharged [Mr. Gears] from the Naval Academy and the Naval Service because of insufficient aptitude", and also demanded that Mr. Gears reimburse the government for the cost of his education at the Academy. Although Mr. Gears knew that the Superintendent was recommending that he be discharged from the naval service, as well as from the Academy, Mr. Gears took no steps to request active duty placement.

Mr. Gears has refused to pay the government the cost of his education at the Academy, which totals $47,570.00; thus, the government filed this suit. The recovery of prejudgment penalty and interest is mandated pursuant to 31 U.S.C. § 3717, but the government has waived its right to recover these additional amounts because the demand notice mailed to Mr. Gears failed to comply with the requirements of 4 C.F.R. §§ 102.2 and 102.13.

## II. DISCUSSION

The only statute directly addressing the matter of reimbursement is 10 U.S.C. § 2005(a)(3), which provides:

(a) The Secretary concerned may require, as a condition to the Secretary providing advanced education assistance to any person, that such person enter into a written agreement with the Secretary concerned under the terms of which such person shall agree—

\* \* \* \* \* \*

(3) that if such person, voluntarily or because of misconduct, fails to complete the period of active duty specified in the agreement, ... such person will reimburse the United States in an amount that bears the same ratio to the total cost of advanced education provided such person as the unserved portion of active duty bears to the total period of active duty such person agreed to serve.

Congress did not define the terms "voluntarily" or "misconduct".

Mr. Gears originally raised several affirmative defenses to this action—waiver, estoppel, and the statute of limitations—but abandoned those in the face of the authorities cited in the government's summary judgment brief.

Neither § 2005(a)(3) nor the Agreement between Mr. Gears and the Navy calls for reimbursement of educational expenses based simply upon the failure to complete the course of study at the Academy. Accordingly, Mr. Gears' discharge from the Academy is not at issue; his obligation to reimburse turns on his discharge from the service. Thus, 10 U.S.C. § 6962, which governs the process for discharge from the Academy, touches the case only insofar as it might assist in determining the reasoning behind Mr. Gears' discharge from the service.

The obligation to reimburse arises under § 2005(a)(3) only if (1) the midshipman fails to complete "the period of active duty specified in the agreement" (which, under Mr. Gears' Agreement, was not more than four years, with no minimum term), and (2) that failure was either (a) voluntary on the midshipman's part or (b) because of misconduct on the midshipman's part. Mr. Gears argues that the government has failed to meet its burden of proof on either of these elements of recovery.

### A. Failure to Complete Active Duty

■ First, Mr. Gears argues that he did not fail to complete his period of active duty because the Secretary denied him the opportunity to do so. He maintains that to gain the benefit of the reimbursement provisions of § 2005(a)(3), the Secretary must assign a "disenrolled" Academy midshipman to active duty. If the midshipman then fails to complete that period of active duty voluntarily or because of misconduct, the obligation to reimburse arises. In short, Mr. Gears argues, no active duty, no reimbursement. He attempts to bolster that argument by pointing to § 2005(f), which was amended to provide Secretaries of the Armed Forces with the authority to claim reimbursement from Reserve Officer Training Corps students without first assigning them to active duty.

*United States v. McCrackin,* 736 F.Supp. 107 (D.S.C.1990), *aff'd,* 929 F.2d 695 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 195, 116 L.Ed.2d 155 (1991), is the only reported case to have interpreted § 2005(a)(3). In *McCrackin,* the defendant Air Force Academy cadet had signed a "Statement of Understanding" that provided that if he failed to complete the prescribed period of active duty because of misconduct, he would reimburse the government for the cost of his education.

After three years at the Air Force Academy, the defendant was accused of using marijuana, lying under oath, and failing to report a fellow cadet's use of marijuana as required by the Air Force Academy Honor Code. The defendant tendered his resignation with the understanding that a recommendation would be made that his active duty service commitment be waived. The Air Force Academy Superintendent recommended to the Secretary of the Air Force that the defendant receive an honorable discharge and that his active duty service commitment be waived. The Superintendent also recommended that the defendant be required to reimburse the government for the cost of his education because the defendant did not meet the standards for enlisted status. The Secretary accepted the defendant's resignation, and directed the defendant to reimburse the government for his education.

The defendant argued that the terms of the Statement of Understanding required the Secretary to order the defendant to active duty prior to requesting reimbursement. The defendant also contended that reimbursement should not be required because he was eligible for enlistment at the time of the Secretary's determination. The court rejected these arguments, and ordered the defendant to reimburse the government for the costs of his education. *United States v. McCrackin,* 736 F.Supp. at 114. The court stated:

[T]he reimbursement provision of AFR [Air Force Regulation] 53–3, which is congressionally authorized in § 2005, is triggered in cases where, as here, the nature of the cadet's misconduct acts as a bar to enlistment and renders him ineligible to serve on active duty. The Office of the Secretary considers the facts in each case to determine whether a cadet is qualified to serve on active duty as an enlisted member.

The Secretary's policy to require reimbursement when he or she reasonably be-

lieves a separated cadet is ineligible to fulfill the ADSC [active duty service commitment] is also consistent with the intent of Congress when § 2005 was added.

736 F.Supp. at 111. The court also noted that considerable deference must be given to military authorities to resolve "uniquely military matters", such as personnel decisions. 736 F.Supp. at 112; *see also Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Berry v. Bean,* 796 F.2d 713, 716 (4th Cir.1986).

 Although the decision of another district court is not binding on this court, the court finds the *McCrackin* reasoning to be persuasive. Congress could not have intended that persons deemed unfit for military service be placed briefly into the armed forces only as a prelude to discharge and reimbursement. The court is unpersuaded that Congress, by making that point explicit with respect to ROTC students, intended a contrary result with respect to students at the military academies. Mr. Gears' Agreement with the Navy placed the length of his active duty in the Navy's discretion, up to a maximum of four years. The Secretary exercised his discretion in determining that the length of Mr. Gears' active duty should be zero days. The court believes that § 2005(a)(3) allows such a course, and warrants reimbursement if the decision was the student's voluntary choice or resulted from misconduct.

 Mr. Gears next challenges the Secretary's decision on the ground that it was arbitrary and capricious. Mr. Gears notes that while he concededly did not meet the Academy's physical standards for midshipmen, he met the Navy's physical standards for enlisted men, which are lower than Academy requirements. At the time of Mr. Gears' disenrollment, the criteria for determining whether a midshipman or enlisted serviceman met the respective weight standard was based in part on percentage of body fat. If a candidate fell within the specified range set forth in the height and weight chart, it was presumed that the candidate's body fat was within naval standards; if a candidate fell outside the height and weight standards, the candidate was required to submit to measurements to estimate the candidate's body fat percentage. A male with a body fat percentage less than or equal to 22% was within standards, while a body fat percentage greater than 22% was over standard, and a body fat percentage over 26% was defined as obese. When Mr. Gears' last body fat measurement was taken on September 26, 1988, he weighed 238 pounds, but his body fat percentage was only 20%. A recommendation was made at that time that Mr. Gears lose weight at a maximum rate of two pounds per week.

Additionally, at the time of Mr. Gears' disenrollment, the physical standards applicable to a regular serviceman included (1) whether the serviceman could sit and touch his toes; (2) whether the serviceman could perform a certain number of sit-ups in two minutes; (3) whether the serviceman could perform a certain number of push-ups in two minutes; and (4) whether the serviceman could perform the 1.5 mile run within a certain time. In addition to these foregoing physical standards, a midshipman also was required to pass an obstacle course, do six pull-ups, and finish a 1.5 mile run in a time less than that for regular servicemen.

Mr. Gears performed unsatisfactorily on the obstacle course and could not perform the minimum number of pull-ups. He also did not complete the 1.5 mile run in accordance with the time standards applicable to midshipmen, but he performed in a time satisfactory for regular servicemen. Mr. Gears satisfactorily completed all the other physical requirements.

Mr. Gears contends that the record simply refutes the Secretary's determination to discharge him from the service. Mr. Gears' reimbursement obligation turns on the discharge decision; he contends that an arbitrary, capricious decision unsupported by the record cannot, or should not, trigger that obligation.

 Mr. Gears seeks greater scrutiny than the law allows of the Secretary's decision to muster him out of the service. First, the court must give deference to the Secretary's decision regrading "uniquely military matters", such as personnel decisions. *Unit-*

ed States v. McCrackin, 736 F.Supp. at 112; see also Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); Berry v. Bean, 796 F.2d 713, 716 (4th Cir.1986). Further, Mr. Gears cannot contest the basis for his discharge from his active duty service requirements without first exhausting his administrative remedies. See, e.g., United States v. McCrackin, 736 F.Supp. at 111 n. 3 (because McCrackin did not avail himself of the administrative opportunity to be heard, he arguably waived his right to attack the Secretary's determination); Martin v. Stone, 759 F.Supp. 19 (D.D.C.1991) (former West Point cadet had to exhaust her administrative remedies before she could claim flaws in Army's investigative hearing concerning allegations of lying and cheating).

Before his disenrollment from the Academy and from naval service, Mr. Gears had the right to submit a "show cause statement" to the Secretary of the Navy. See 10 U.S.C. § 6962(b). He declined to exercise this right, claiming that such an act would be futile because the Secretary merely "rubber stamps" the recommendations he received. Mr. Gears has presented no evidence that the Secretary would not have considered the show cause statement before making a decision regarding Mr. Gears' naval future. Although Mr. Gears knew the recommendation to the Secretary included discharge from the service as well as the Academy, he did not present evidence of his fitness for active duty to the Secretary. Mr. Gears failed to exhaust his administrative remedies concerning the basis for his discharge from the Academy and from the naval service, and, while he remains free to challenge his obligation to reimburse, he cannot contest the Secretary's decision to discharge him from the Navy in this court.

Accordingly, the court finds that the government has proven the first element for recovery of educational expenses under § 2005(a)(3): Mr. Gears failed to complete the period of active duty specified in his Agreement with the Navy.

### B. Voluntary or Misconduct

The second element for recovery under § 2005(a)(3) requires the government to prove either that Mr. Gears voluntarily failed to complete his period of active duty or that his failure to complete his period of active duty was because of misconduct. For the following reasons, the court finds that the government has not satisfied this burden.

### 1. Voluntariness

■ The government contends that Mr. Gears' failure to complete a tour of active duty was voluntary. The government relies on "voluntariness" in two senses—acquiescence and volition. First, Mr. Gears' failure to file a "show cause" statement with respect to the Superintendent's recommendation demonstrates his acquiescence in the recommendation of severance from the service. Second, the conduct that led to the Secretary's action was volitional in that it was not caused by disease or physical defect. Each of these arguments reaches too far.

As to acquiescence, it is true that Mr. Gears' failure to protest the Superintendent's recommendation carries a permissible inference that separation from the service was agreeable. The court believes, however, that the other evidence in the case, which is discussed below, greatly outweighs this inference. Moreover, his "acquiescence" cannot be said to have caused his dismissal from the Navy; the Superintendent did not recommend separation from service if Mr. Gears did not object.

As to volition, the court does not believe that the statutory term "voluntarily" can be so construed. Congress plainly intended to limit the reimbursement obligation to a class of persons, and the government's interpretation would remove any such limits: only those drummed out of the service for non-volitional—involuntary—acts would be spared the reimbursement obligation. The record does not allow an evaluation of the number of persons (if any) who are severed from service for involuntary conduct, but the court believes that such a reading would cast a far wider net than is consistent with the Congressional intent evident from the plain language of § 2005(a)(3).

■ Based on the statute's structure and purpose, the court believes that the phrase

"voluntarily ... fails to complete the period of active duty" requires, at the least, either an intent to produce a separation from the service or an awareness that a chosen course of conduct will produce such a result. The government's proof does not establish such an intent or awareness on Mr. Gears' part. Setting aside the extent of his unsuccessful efforts to achieve the Academy's weight requirements, the record contains no indication that Mr. Gears knew or intended that his weight, which satisfied the requirements for enlisted men, would result in his discharge from the Navy.

At each stage of the proceedings leading up to the Superintendent's recommendation, Mr. Gears fought to remain at the Academy, a course of conduct quite inconsistent with a desire to leave the Navy. Until the Superintendent acted, none of the boards reviewing Mr. Gears' case recommended separation from the Navy; nothing in the record indicates that Mr. Gears knew that his weight threatened his active service as well as his commission. As the government points out, Mr. Gears did not file a "show cause" statement in response to the Superintendent's recommendation, but he explains that he had been told that such a course would be futile. The record contains no suggestion that a weight loss after the Superintendent made his recommendation would have made any difference. For these reasons, the court finds that Mr. Gears did not "voluntarily" fail to complete his active service.

### 2. Misconduct

■ The government also contends that Mr. Gears failed to complete his period of active service "because of misconduct"; this contention requires a careful study of the reasons for the Secretary's decision to discharge Mr. Gears from the Navy as well as from the Academy. The Secretary's March 21, 1989 discharge memo is terse:

1. In accordance with the recommendation of the Superintendent, U.S. Naval Academy, you are hereby discharged from the U.S. Naval Academy and the Naval Service because of insufficient aptitude.

2. As per [10 U.S.C. § 2005], you will be required to reimburse the government for the cost of your education received at the Naval Academy.

The Superintendent's January 26 recommendation, to which the Secretary's memo referred, recited Mr. Gears' history at the Academy. It reports that Mr. Gears was "outside the prescribed weight standard throughout most of his time at" the Academy, and concludes that "[h]is noncompliance with Naval Academy weight standards reflects a lackluster attitude toward maintaining an effective weight reduction program." Further, "[a]s a result of his weight problem, Midshipman Gears' performance deteriorated in other areas": he received three D grades in military performance; his company officer ranked him in the bottom half of his company; and his inability to conform to the Academy's physical fitness standard led to an inability to meet the Academy's minimum physical education requirements.

The Superintendent reported that the Commandant of Midshipmen had referred Mr. Gears to the Academic Board "based on his failure to comply with Naval Academy weight standards, poor military performance and his demonstrated lack of motivation toward becoming a naval officer", and that the Academic Board unanimously found Mr. Gears "to possess insufficient aptitude to become a commissioned officer in the naval service." The Superintendent then made his own recommendation:

Midshipman Gears' overall performance and demonstrated lack of sincere commitment to Naval Academy standards clearly indicates that he does not possess the qualities desired of a midshipman or naval officer, and I recommend that he be separated from the Naval Academy due to insufficient aptitude. Inasmuch as Midshipman Gears has been unable to control his weight, it is evident this problem will persist and could pose a bar to satisfactory performance in the Navy in an enlisted status. Accordingly, I also recommend that he not be ordered to fulfill any active duty service obligation.

From these documents, the court must determine whether Mr. Gears failed to complete his active duty "because of misconduct". Both parties agree that Congress has not defined the term misconduct, but neither party provided a definition of the word. In ordinary usage, "misconduct" is "mismanagement [especially] of governmental or military

responsibilities", or a "deliberate violation of a rule of law or standard of behavior [especially] by a governmental official", *see Webster's Third New International Dictionary* 1443 (1981) (unabridged); "[b]ehavior not conforming to prevailing standards or laws", *see The American Heritage Dictionary of the English Language* 838 (1969); "[a] transgression of some established and definite rule of action, ... a dereliction from duty", *see Black's Law Dictionary* 999 (6th ed. 1990).

Failing to follow a superior officer's order constitutes misconduct under any of these definitions; the court assumes for purposes of this case that failing to follow an order to lose weight constitutes misconduct, as well. If the specific reason for discharging Mr. Gears from his active duty service requirement was his failure to comply with a superior officer's order, then his discharge would be. because of misconduct, and he would be required to reimburse the government for the cost of his education.

The record, however, does not establish that Mr. Gears was discharged from the service for failing to follow such an order. The Academic Board recommended his disenrollment in part because of Mr. Gears' "non-compliance with the Naval Academy weight standards", not because of his refusal to follow an order to lose weight. The record before the court indicates that such orders may have been given from time to time, but neither the Secretary's discharge memo nor the reports on which the discharge memo was based suggest that the Secretary was aware of any such order or disobedience. The Secretary cannot be found to have discharged Mr. Gears for misconduct of which the Secretary was unaware.

The stated reason for Mr. Gears' discharge from his active duty service requirement was "insufficient aptitude" to be a commissioned naval officer. "Aptitude" is defined as "a general fitness or suitableness", *see Webster's Third New International Dictionary* 108 (1981) (unabridged); and "[t]he state or quality of being fitting; appropriateness", *see The American Heritage Dictionary of the English Language* 65 (1969).

Not having the proper fitness or suitability of a naval officer, by itself, does not equate to behavior not in conformity with prevailing standards. Insufficient aptitude may be a result of misconduct—one who flatly disobeys a superior's orders is not suitable or fit to be a military officer—but does not necessarily flow from misconduct; one may possess insufficient aptitude for reasons other than misconduct. At bottom, insufficient aptitude and misconduct are distinct, occasionally overlapping, concepts. Neither the Secretary nor the Superintendent used the word "misconduct"; rather, the term "insufficient aptitude" was employed. The Superintendent's recommendation speaks of insincere commitment and not having the desired qualities of a naval officer, and elsewhere about a lackluster attitude, but those reasons do not necessarily constitute misconduct. The Superintendent's recommendation also mentions Mr. Gears' non-compliance with Naval Academy weight standards, and asserts that Mr. Gears' weight problem "could" persist and pose a future problem in his enlisted status, but there is no indication that the Secretary equated a future weight problem with present misconduct—i.e., disobeying a superior officer's orders.

For these reasons, the court cannot find it more likely than not that Mr. Gears was discharged "because of misconduct". Insufficient aptitude encompasses, but is broader than, misconduct. The right to reimbursement, clearly contemplated by the Secretary at the time of the discharge, requires misconduct, not insufficient aptitude other than misconduct. As discussed above, in light of Mr. Gears' failure to file a "show cause" statement, the Secretary's action was virtually unreviewable at the time it was made. Had the Secretary intended to discharge Mr. Gears for misconduct, that intent should have been stated plainly.

### III. ATTORNEY FEES

█ Mr. Gears seeks an award of attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. He is entitled to such an award "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The government's position could be substantially justified even though it

was not correct, if a "reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Young v. Sullivan,* 972 F.2d 830, 835 (7th Cir.1992) (quoting *Pierce v. Underwood,* 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 2550 n. 2, 101 L.Ed.2d 490 (1988)). Additionally, "the special circumstances exception helps to ensure that the government can advance in good faith novel but credible interpretations of the law." *United States v. Winchester Municipal Utilities,* 944 F.2d 301, 306 (6th Cir.1991); *Jackson v. Bowen,* 807 F.2d 127, 128 n. 3 (8th Cir.1986); *Gomez–Arauz v. McNary,* 779 F.Supp. 1308, 1311 (W.D.Okla.1991), *aff'd,* 972 F.2d 356 (10th Cir.1992). Whether the government's position was substantially justified is left to the trial court's discretion, *Young v. Sullivan,* 972 F.2d at 835, with the burden of proof upon the government. *Cummings v. Sullivan,* 950 F.2d 492, 495 (7th Cir.1991).

Mr. Gears contends that this suit was not substantially justified because this was the first case in which the Secretary of the Navy has sought reimbursement from a midshipman whose discharge was based on insufficient aptitude or failing to meet weight standards. Mr. Gears believes that this was a "test case", with the government seeking to validate certain Navy regulations.

The court disagrees. The government's action was substantially justified. Before this case, there had only been one reported case interpreting the statute at issue, 10 U.S.C. § 2005, and that case was resolved in the government's favor. *See United States v. McCrackin,* 736 F.Supp. 107. While it is true that the facts in *McCrackin* and this case differ, *McCrackin* supports the general positions advanced by the government.

Moreover, this case ultimately turned on a question of statutory interpretation, with both parties presenting reasonable interpretations of the law, and the law as applied to the facts. Although the court decided the case in Mr. Gears' favor, it was a close decision; the closeness of the question is itself evidence of substantial justification. *Cummings v. Sullivan,* 950 F.2d at 498. Moreover, to award Mr. Gears attorney fees would be, in essence, punishing the government for advancing in good faith a novel but credible interpretation of the law.

In sum, the court finds that the government's position was substantially justified and special circumstances make an award of fees unjust. Accordingly, Mr. Gears' request for attorney fees must be denied.

### IV. CONCLUSION

Mr. Gears failed to complete his period of active service, but the government has not shown that his failure was voluntary or due to misconduct. Accordingly, the government is not entitled to reimbursement under 10 U.S.C. § 2005(a)(3). The clerk is directed to enter judgment for the defendant. Mr. Gears' request for attorney fees under 28 U.S.C. § 2412, must be, and is hereby, DENIED.

SO ORDERED.