**UNITED STATES of America Plaintiff,**

v.

**Jason M. BUSH Defendant.**

**No. 99–CV–499.**

United States District Court,
M.D. North Carolina.

Nov. 25, 2002.

As Amended Dec. 18, 2002.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for Plaintiff.

Donald L. Murphy, Martin & Murphy, Greensboro, NC, Louis P. Font, Font & Glazer, Brookline, MA, for Defendant.

## MEMORANDUM OPINION

TILLEY, Chief Judge.

This case is before the Court on the Plaintiff's Motion for Summary Judgment

and Motion to Dismiss Defendant's Counterclaims [Docs. # 19 & 20] and the Defendant's Cross–Motion for Summary Judgment [Doc. # 34]. For the reasons set forth below, the Plaintiff's Motion is GRANTED, the Defendant's Counterclaims are DISMISSED, and the Defendant's Motion is DENIED.

## I.

The undisputed facts are as follows. On August 28, 1988, Jason Bush entered into an Army Senior Reserve Officer Training Corps ("ROTC") Scholarship Cadet Contract ("contract"). The contract provided monies from the United States Government to Bush for tuition, fee payments, and subsistence allowance while he was enrolled in the ROTC at Clarkson University. The contract required that Bush, among other things, complete the requirements of a four-year course of instruction in the ROTC Program at Clarkson University. If Bush failed the ROTC course of study or was disenrolled as a scholarship ROTC student the contract gave the Army the option to order Bush to active duty as an enlisted soldier.

The contract stated that "[t]his contract may be terminated by the Secretary of the Army because of breach of contract on... [defendant's]... part for any reason to include misconduct." The contract also stated that "[a]s used in this contract, misconduct includes, but is not limited to, misrepresentation, failure due to separation because of homosexuality, drug abuse, alcohol abuse, criminal conduct, civil confinement, unsuccessful completion of a weight control program, and moral or professional dereliction."

The contract further provided that if Bush failed to complete the period of active duty specified under the contract, he would be required to reimburse the United States the dollar amount with interest of the total cost of the scholarship financial assistance provided to him.

On March 8, 1992, Bush was arrested for wanton acts of vandalism after he smashed the windows of several cars parked at a used car dealership in Potsdam, New York. Bush caused in excess of $2,000.00 in damages to the owner of the dealership. Pursuant to a guilty plea, Bush was convicted on three counts of criminal mischief in the fourth degree.

Prior to his conviction Bush had an excellent ROTC record including high grade point averages in all of his ROTC classes. Bush also volunteered for and completed Airborne and Air Assault training.

On April 12, 1993, a Board of Officers was convened pursuant to Army Regulation 145–1, paragraph 3–43 and Army Regulation 15–6. The Board of Officers met to consider Bush's case for a possible breach of his contract and to determine if he should be commissioned as an officer in the U.S. Army. Bush, represented by counsel, personally appeared before the Board of Officers. Bush was the only witness to testify before the Board.

During the hearing, Bush orally acknowledged signing the DA Form 597–3, the DA Form 567–3A–R, and the DD Forms 4–1 and 4–2 that created the contract between himself and the Secretary of the Army. Bush also acknowledged that he had received scholarship monies and subsistence payments while he was attending Clarkson University. While in front of the Board of Officers, Bush's counsel requested that Bush be allowed "to come to financial terms for the repayment of his obligation as opposed to entering active duty."

Bush testified that the incident "is an incident not related to my character in any way. This was one hour of one day of my college career....and in no way typifies who I am as a person or in any way

reflects my career as a cadet." Bush also introduced written evidence in the form of a number of letters of recommendation. The letters included letters from: (1) the active duty officers of the Clarkson University ROTC; (2) Lieutenant Colonel Lawrence C. Shakleton, Professor of Military Science and head of the Clarkson University ROTC program; (3) Captain Thomas Besto; and (4) Kenneth J. McAuliffe, Principal of the Defendant's Junior–Senior High School.

Bush also introduced evidence of an eye injury he received during Army training in July 1991 and the surgery he underwent as a result. Bush testified that Professor Shakleton told him that because of the injury he could have been medically discharged from the Army. Bush said that he was never made aware of this possibility and was not evaluated to determine his medical qualification for ROTC.

On April 16, 1993, the Board of Officers found that Cadet Bush had breached his ROTC contract by demonstrating an undesirable character trait of misconduct through his criminal conviction. The Board of Officers recommended that the defendant be disenrolled from the ROTC scholarship program as a result of this undesirable character trait of misconduct. The Board of Officers also declined to order Bush to active duty.

The finding of the Board of Officers was reviewed and approved for legal sufficiency by Administrative Law Officer Swallow. The recommendation of the Board of Officers to disenroll Bush from scholarship status was approved on August 3, 1993 by the Commander, U.S. Army ROTC Command. The Commander directed that Bush be disenrolled from scholarship status, but not be disenrolled from ROTC or honorably discharged from his enlisted status until Bush had made a full repayment.

The U.S. Army sent a letter dated August 10, 1993, informing Bush of his Financial Assistance Record and providing him with the total amount spent in support of his educational assistance. The letter requested that Bush respond and choose a method of repayment. The letter specified that failure to respond within a 45–day time period would be considered a refusal to make repayment. Bush never responded. On December 22, 1998 Bush was advised by letter that his debt was being referred to the Department of Justice for collection enforcement. The total amount due, at this time, is $48,929.93 which includes the principal amount of $40,005.88, interest computed as January 1, 1999 of $4,679.11, penalty charges in the amount of $4,244,94, and additional interest rate of 3.01% per annum from January 1, 1999 until judgment.

Plaintiff, the United States, filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and a motion to dismiss the Plaintiff's counterclaims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendant filed a cross motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and in support of the counterclaims.

## II.

The Plaintiff argues that the Court should dismiss the Plaintiff's counterclaim regarding back pay pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or in the alternative Federal Rule of Civil Procedure 12(b)(6). Federal courts are courts of limited jurisdiction; they can only hear cases authorized by the Constitution or by statute. *See* U.S. Const. Art. 3 § 2; 28 U.S.C. §§ 1330–1368 (West Supp.2002). Unless the case involves specialized issues such as admiralty and patents, a federal

district court typically will have jurisdiction only if the requirements of 28 U.S.C. § 1331 (federal question) or 28 U.S.C. § 1332 (diversity of citizenship) are satisfied.

■ Bush argues that the government owes him back pay for his time served and allowances for his time served in the Army Reserves. 28 U.S.C. § 1346(a), often called the Tucker Act, defines jurisdiction over non-tort money damages against the United States. *Mitchell v. United States,* 930 F.2d 893 (Fed.Cir.1991).

■ Under the Tucker Act, the United States Court of Federal Claims and the federal district courts share original jurisdiction over non-tort monetary claims against the United States not exceeding $10,000.00. 28 U.S.C. § 1346(a)(2). However, the Court of Federal Claims has exclusive jurisdiction over such claims in excess of $10,000.00. 28 U.S.C. § 1491. Since Bush is claiming pay back for eight years, it is likely that he is claiming a monetary amount in excess of $10,000.00 Therefore, in order for this court to have jurisdiction, Bush would have to waive his right to any monetary relief in excess of $10,000.00.

Even if Bush were willing to waive monetary recovery excess of $10,000, he still would fail to state a claim on which relief could be based. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). The Supreme Court has explained that a complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Since Bush is not on active duty, he can only seek back pay for the duties he actually performs or drills he actually attended. *Palmer v. Unites States,* 168 F.3d 1310, 1314 (Fed.Cir.1999)(stating that a member who is on Reserve duty has no lawful claim against the United States for unattended drills or unperformed duty). Bush has performed no drills or active duty training during the eight years after his disenrollment as an ROTC scholarship student. Therefore, Bush has no claim for back pay.

### III.

The Plaintiff also argues that summary judgment should be granted on its claims against the Defendant. Summary judgment is only proper when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cox v. County of Prince William,* 249 F.3d 295, 299 (4th Cir.2001). Summary judgment requires a determination of the sufficiency of the evidence, not a weighing of the evidence. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is genuine if a reasonable jury, based on the evidence, could find in favor of the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Cox,* 249 F.3d at 299. The materiality of a fact depends on whether the existence of the fact could cause a jury to reach different outcomes. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Cox,* 249 F.3d at 299; *Solers, Inc. v. Hartford Cas. Ins. Co.,* 146 F.Supp.2d 785, 791 (E.D.Va.2001). The party opposing the motion may not rest upon its pleadings but must instead provide evidence or point to evidence already on the record that would be sufficient to support a jury verdict in its

favor. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. This evidence must be properly authenticated pursuant to Rule 56(e). *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir.1993).

### A.

The government has forecast evidence that Bush entered into a contract with the Secretary of the Army that included the obligation of reimbursement if a cadet failed to complete his active duty voluntarily or because of misconduct.[1] The government argues that Bush's disenrollment was proper under his ROTC contract and followed the statutory provisions of 10 U.S.C. § 2005.

The government also argues that Bush, as a result of his disenrollment and request not to serve active duty, did not fulfil the active duty requirement in his contract. In previous cases, such provisions were triggered when a cadet's misconduct was a bar to receiving a commission and serving an active duty obligation. *United States v. McCrackin*, 736 F.Supp. 107 (D.S.C.1990), *aff'd* 929 F.2d 695 (4th Cir. 1991) *cert. denied* 502 U.S. 867, 112 S.Ct. 195, 116 L.Ed.2d 155 (1991)(holding that a cadet that was ineligible to fulfill active duty requirements because of his resignation in the face of drug charges was obligated to reimburse the United States under his ROTC contract). Therefore, the government argues that Bush triggered the reimbursement provision in his contract and in accordance with the contract and 10 U.S.C. § 2005 must reimburse the government.

### B.

Bush does not contest the fact that he entered into the contract, and that educational costs were incurred as a result of the contract. Instead, Bush argues that the government is not entitled to reimbursement because: (1) the behavior that he engaged in does not constitute misconduct as defined under the contract; (2) he has not been disenrolled from ROTC, or the Army Reserve and therefore has completed his active duty requirement; and (3) the Army failed to follow the provisions of 10 U.S.C. § 2005.

### 1.

First, Bush argues that his vandalism does not constitute misconduct because the

---

1. Title 10 U.S.C. § 2005 governs the power of the Secretary of the Army to *terminate* contracts that involve the payment of educational expenses and any subsequent reimbursement. Title 10 U.S.C. § 2005 states:

    (a) The Secretary concerned may require, as a condition to the Secretary providing advanced educational assistance to any person, that such person enter into written agreement with the Secretary concerned under the terms of which such person shall agree-

    (1)to complete the educational requirements specified in the agreement and to serve on active duty for a period of time specified in the agreement;

    (2) that if such person fails to complete the education requirements specified in the agreement, such person will serve on active duty for a period specified in the agreement;

    (3) that if such person, voluntarily or because of misconduct fails to complete the period of active duty specified in the agreement, or fails to fulfill any term or condition prescribed pursuant to clause (4), such person will reimburse the United States an amount that bears the same ratio to the total cost of advanced education provided such person as the unserved portion of active duty bears to the total period of active duty such person agreed to serve....

    (f)(1) ... the Secretary will have the option to order [ROTC Cadets] to reimburse the United States in the manner provided for in clause (3) of such subsection without the Secretary first ordering such person to active duty as provided under clause (2).

    Title 10 U.S.C. § 2005.

event was a singular event and the Army regulation requires a series of events. Army Regulation 145–1, paragraph 3–43 specifies the grounds for disenrollment. A pattern of misconduct is not one of the grounds listed under the regulation. Instead, Army Regulation 145–1 paragraph 2043(a)(14) states that among other things an undesirable character trait is demonstrated by discreditable incidents with civil authorities.

■ However, it is not necessary to address Bush's argument regarding the wording of Regulation 145–1 because of the language contained in Bush's ROTC contract. Bush's ROTC contract defines misconducts as among other things a "criminal conviction." Bush's conviction for vandalism is a criminal conviction. Therefore, the government had grounds to terminate his status as a scholarship ROTC student.

### 2.

■ Second, Bush argues that since he was never disenrolled from the ROTC program or the Army he cannot be required to reimburse the government. While Bush's eight year service in the Army Reserves does fulfill one part of his ROTC contract, service in the Army Reserves is not considered active duty under the ROTC contract. The ROTC contract requires that Bush complete one of three set periods of active duty. The time periods vary in length, but the least amount of time is one year of active duty. Bush has not served any amount of active duty time. Therefore, Bush has not satisfied this requirement.

Further, Bush's enrollment in the ROTC does not determine whether or not he is obligated to reimburse the government. Bush's obligation to the government is based on his violation of the ROTC scholarship student contract. This contract is not connected to his status as a member of the ROTC, but instead is connected to his status as a party to the contract.

In addition, there is nothing in 10 U.S.C. § 2005 that requires that Bush, or any other ROTC cadet be disenrolled or discharged before he becomes liable for reimbursement to the government. In fact, in Paragraph R(3) of Bush's ROTC contract states:

> if... for any reason I [Bush] am forced to abandon my ROTC scholarship, but I remain enrolled in the ROTC as a nonscholarship cadet, I will be required to repay all of my scholarship benefits... if for any reason I fail to qualify for a commissioning or fail to accept an appointment, if offered.

Therefore, Bush's status as an enrolled member of the ROTC and eight-year service in the Army Reserve have no effect on his obligation to reimburse the government for the violation of his ROTC contract.

### 3.

■ Third, Bush argues that the United States failed to comply with the due process requirements of 10 U.S.C. § 2005(g) because the government failed to hold a hearing regarding whether the behavior that forms the basis for separation is misconduct. 10 U.S.C. § 2005(g) provides that:

> ... [I]n any case in which the Secretary concerned determines that a person who entered into an agreement under this section failed to complete the period of active duty specified in the agreement... and, by reason of the provision of the agreement... may owe a debt to the United States and in which that person disputes that such a debt is owed, the Secretary shall designate a member of the armed forced or a civilian employee under the jurisdiction of the Secretary to investigate the facts of the

case and hear evidence presented by the person who may owe the debt and other parties, as appropriate, in order to determine the validity of the debt. That official shall report the official's findings and recommendation to the Secretary concerned. If the justification for the debt investigated includes an allegation of misconduct, the investigating official shall state in the report the official's assessment as to whether the individual behavior that resulted in the separation of the person who may owe the debt qualifies as a misconduct under subsection (a)(3).

A Board of Officers was convened on April 12, 1993. The Board of Officers was convened to hold a hearing to determine: (1) whether Bush entered into an ROTC contract; (2) whether he received monies under the contract; (3) whether he was informed about the terms; and (4) whether he was in breach of the contract. Bush was given notice of the Board of Officers hearing. He was present, testified, presented evidence and was represented by counsel before the Board of Officers. The Board of Officers found that Bush entered into a contract, received monies under the contract, was informed of the terms, and was in breach of the contract. The Board of Officer's finding was reviewed and approved by an administrative law officer. The Board of Officers recommended to the Commander·of the U.S. Army ROTC Command that Bush be disenrolled because his criminal conviction demonstrated an undesirable character trait of misconduct.

The Board of Officers hearing conforms to the requirements of the statute including the requirement that the investigating officials state in the report their assessment as to whether the individual behavior qualifies as misconduct. The Board of Officers clearly stated in its recommendation that in its assessment Bush's criminal conviction qualified as misconduct under the ROTC contract. Therefore, the United States did not deny Bush the due process rights provided in 10 U.S.C. § 2005.

### IV.

In addition, to his claims directly regarding the ROTC contract, Bush filed two other counterclaims against the government. The government argues that these counterclaims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). The Supreme Court has explained that a complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A Rule 12(b)(6) motion should only be granted if, after accepting the allegations in the complaint as true, the plaintiff cannot prove any set of facts in support of a claim that entitles him to relief. *Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). Moreover, a motion to dismiss must be assessed in light of the pleading standards of Rule 8, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8.

▇ First, Bush argues that he should have been medically discharged because of an eye injury suffered during training. Neither party disputes that Bush received an eye injury. However, there is no evidence that Bush was not medically qualified to serve on active duty at the time of the Board of Officers hearing.

In addition, Bush never pursued a medical discharge. At the time of his injury

none of the medical personnel who treated Bush recommended that he be considered for discharge. Bush fails to forecast any evidence that he was denied a medical discharge or was entitled to a discharge at the time of the Board of Officers hearing. The possibility of a previous medical discharge is not mentioned as a reason for nonperformance in Bush's ROTC contract or in 10 U.S.C. § 2005. Therefore, Bush's claim regarding the medical discharge is dismissed for failure to state a claim.

■ Second, Bush argues that illegal actions by Army ROTC officials made it impossible for him to serve on active duty. Bush argues that he should be excused from active duty, because the illegal action by Army ROTC officials prevented his performance under the contract. Bush alleges that the illegal action of the ROTC officials was their attempt to disenroll Bush without just cause.

However, Bush's disenrollment from the ROTC program was not based on conduct by any ROTC officials, but on the criminal convictions he received for acts of vandalism. In addition, Bush fails to provide any allegation of the particular illegal activities or regulations that the ROTC officials violated. Therefore, this counterclaim must be dismissed for failure to state a claim on which relief can be granted.

## V.

For the reasons stated above, the Plaintiff's motion for summary judgment is GRANTED. The Defendant's Counterclaims are DISMISSED and the Defendant's motion for Summary Judgment is DENIED.

### AMENDED JUDGMENT

UPON CONSIDERATION of the Plaintiff's Motion to Amend the Judgment, the Motion is GRANTED.

IT IS ORDERED AND ADJUDGED that for the reasons set forth in this Court's Memorandum of Opinion dated November 25, 2002, Plaintiff's Motion for Summary Judgment is granted, Defendant's counterclaims are dismissed and Defendant's Cross–Motion for Summary Judgment is denied. It is further ordered that the United States of America have and recover from the Defendant, Jason M. Bush, the sum of Forty Thousand Five and 88/100 ($40,005.88) Dollars as principal and Four Thousand Six Hundred Seventy Nine and 11/100 ($4,679.11) Dollars as interest due to the 1st day of January, 1999, additional interest at the rate of 3.01% per annum from the 1st day of January, 1999 until the date of judgment, and Four Thousand Two Hundred Forty Four and 94/100 ($4,244.94) Dollars as penalties, and One Hundred Seventy and No/100 ($170.00) Dollars as costs, together with post-judgment interest on the total amount of this judgment at the legal rate of 1.47 percent per annum, computed daily and compounded annually, from entry of this Judgment until paid.