**Clyde WYATT, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 90–3854 C.

United States Claims Court.

June 6, 1991.

Clyde Wyatt, pro se.

Mark D. Rubino, with whom were Asst. Atty. Gen., Stuart M. Gerson, David M. Cohen and Mary Mitchelson, Washington, D.C., for defendant.

## OPINION and ORDER

TURNER, Judge.

Plaintiff challenges his involuntary separation from the United States Army. The case is before the court on defendant's motion to dismiss the complaint for lack of jurisdiction or, in the alternative, for summary judgment. For the reasons given below, we conclude that plaintiff's complaint is within the court's jurisdiction. We further conclude that under the appropriate standard of review—whether the discharge decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure—there is no basis for setting aside Wyatt's separation.

### I

Except where indicated otherwise, the following statement of facts is based on defendant's Proposed Findings of Uncon-

troverted Fact[1] and on portions of Wyatt's Military Personnel Records Jacket.[2]

On August 29, 1978, Wyatt enlisted in the United States Army and was initially assigned to Company C, 2d Battalion, 68th Armored Division. He received a good conduct medal for "Exemplary Behavior, Efficiency and Fidelity in Active Federal Military Service" for his performance from the time of his enlistment through September 1981. From June 1982 through April 1984, Wyatt received training as a tank gunner, during which time he received generally favorable remarks on his Enlisted Evaluation Reports (EER).[3]

Some time in 1984 (the record is unclear as to the date) Wyatt was transferred to Company C, 2d Battalion, 77th Armored Division, Fort Lewis, Washington. At Fort Lewis, Wyatt began having financial difficulties. He wrote a bad check in January 1985, another bad check in October 1985, and a third bad check in November 1985. Further, in August 1985 Wyatt missed a $249 payment on an auto loan and a $1286 payment for an auto insurance premium, resulting in the cancellation of his auto insurance. In addition, Wyatt overdrew his credit union account and became delinquent on a consumer loan in October 1985.

Wyatt also experienced disciplinary problems at Fort Lewis. On November 15, 1985 he drove his car in violation of an order from his commanding officer not to drive his car without insurance. On January 16, 1986 Wyatt was unable to perform his assigned duties due to intoxication. Eight days later Wyatt failed to report for duty on time.

On January 16, 1986, Wyatt was arrested off base and charged with driving while intoxicated. Wyatt's superior officers were informed of the incident, and a letter of reprimand was placed in Wyatt's file.

On January 26, 1986, Wyatt's commanding officer informed Wyatt that he was instituting disciplinary proceedings for Wyatt's disobedience on November 15, incapacitation from performance of duty due to intoxication on January 16, and failure to report for duty on time on January 24. Wyatt waived his right to a trial by court-martial and was found guilty of the three offenses charged in a proceeding conducted pursuant to Article 15 of the Uniform Code of Military Justice.[4] The presiding officer imposed a punishment of reduction in grade, a fine of one-half month's pay for two months, 45 days extra duty and 45 days of restriction to place of duty, worship and dining facility. The restriction to place of duty, worship and dining facility was suspended. Wyatt elected not to appeal the decision.

On February 11, 1986, Wyatt left his place of duty without permission. As a consequence, Wyatt's commanding officer vacated the suspension of the restriction to place of duty, worship and dining facility. Three days later Wyatt's company commander sent Wyatt written notice that he

---

1. Defendant filed its Proposed Findings of Uncontroverted Fact on March 26, 1991. To date, Wyatt has not responded.

2. Defendant filed an extract of Wyatt's Military Personnel Records Jacket in conjunction with its motion for summary judgment. The records are certified to be true and correct by an officer in the Military Personnel Branch, Office of the Judge Advocate General of the Army.

3. The indorser's comments on the EER for the period September 1983 through April 1984 are typical:

    SP5 Wyatt is a good junior NCO whose initiative and ability to communicate are at a far greater level than most of his peers. His appearance has always been outstanding and he requires little supervision when assigned a task. SP5 Wyatt can be trusted to perform all

assigned tasks to the best of his ability. His knowledge of technical skills is somewhat lacking and I believe this was mainly due to some personal conflicts which he has overcome. SP5 Wyatt is an asset to this unit and the army, and with more military education will become a very fine Non–Commissioned Officer.

4. Under Article 15 of the Uniform Code of Military Justice, certain officers may impose non-judicial punishment for misconduct on those who waive a trial by court-martial. Under Article 15, the accused serviceman has a right to a hearing, to examine the evidence against him, to present matters in defense and to call witnesses. The presiding officer may impose punishment only if he is convinced beyond a reasonable doubt that the serviceman committed the acts of misconduct.

would recommend that Wyatt be separated from the Army for unsatisfactory performance.[5] The notice provided, *inter alia*, that Wyatt had the right to consult with legal counsel, to obtain copies of all documents to be considered by the separation authority, to present his case to an administrative separation board, to be represented at the board hearing and to submit statements in his own behalf. The notice also informed Wyatt that he could

expect to encounter substantial prejudice in civilian life if a general discharge under honorable conditions is issued.... [I]f ... a discharge certificate [indicating a] character of service which is less than honorable [is issued, you have the right to] make application to the Army Discharge Review Board or the Army Board for Correction of Military Records for upgrading [of the discharge]....

Wyatt requested legal counsel, but waived his right to have his case considered by a board of officers and waived his right to submit statements in his own behalf.

Meanwhile, on February 23 Wyatt failed to report to extra duty and broke his restriction to place of duty, worship and dining facility. Disciplinary proceedings were again instituted, and Wyatt again waived his right to a trial by court-martial. He was found guilty in a second Article 15 proceeding of leaving his place of duty on February 11, failing to report to extra duty on February 23 and breaking restriction on February 23. As a punishment Wyatt was further reduced in grade, was again fined and put on extra duty and was again restricted to his place of duty, worship and dining facility (with the restriction suspended). Again, Wyatt elected not to appeal the decision.

On February 27 Wyatt was arrested at a local motel and charged with interfering with a police officer and resisting arrest. Wyatt's battalion commander was informed of the incident.

On March 3 Wyatt's company commander formally recommended to the battalion commander that Wyatt be separated from the Army for unsatisfactory performance. That same day the battalion commander approved the recommended separation under authority of AR 635–200 (January 15, 1986), ¶¶ 13–2 & 13–3, which vest commanders with the authority to separate servicemembers for unsatisfactory performance. Wyatt was given a general discharge under honorable conditions.

## II

On October 12, 1990, Wyatt filed his complaint, alleging that his March 3, 1986 discharge was wrongful. According to Wyatt,

[the Army] wrongfully discharged plaintiff administratively alledging [sic] plaintiff disobeyed a lawfully [sic] order giving [sic] by LTC Charles S. Rousek commander of 2nd Battalion 77th Armor.

Plaintiff Wyatt never received such an order from the commander, and never committed the act as alleged in the accountable record Art[icle] 15.

Petitioner has recently learned that such conduct was intended to prevent his orders to leave Ft. Lewis in search of career advancement. Futher [sic], that his once chain of command committed perjury and lied in the official statement to a board of inquiry.

The prayer for relief seeks a declaratory judgment as to Wyatt's rights, punitive damages, back pay and reinstatement in the Army.[6] We dismissed *sua sponte* as beyond the Claims Court's jurisdiction the requests for a declaratory judgment and for punitive damages.

---

5. Wyatt acknowledged in writing that he received and read the notice.

6. Wyatt is appearing *pro se,* and his complaint should therefore be construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) ("however inartfully pleaded," a *pro se* complaint should be held to less stringent standards than pleadings drafted by lawyers). Wyatt alleges that he "would have

worked within the U.S. Army, gained promotion and served his country well." He goes on to request "restitution for plaintiff and all rights[,] privileges, benefits and income that would have been buy him, but for defendant's unlawful practices." We take this to mean that Wyatt seeks reinstatement in the Army and back pay for the period of his unlawful separation.

Defendant responded to the complaint with a motion to dismiss Wyatt's claim for lack of jurisdiction or, in the alternative, for summary judgment. According to defendant, the complaint should be dismissed because Wyatt does not allege the basis of the court's jurisdiction. Alternatively, defendant argues that it is entitled to summary judgment because Wyatt, by electing not to appeal the finding of guilt in the first Article 15 proceeding and by failing to appeal the discharge decision to the Army Discharge Review Board, waived his right to challenge the separation in court. Finally, defendant argues that the government is entitled to judgment as a matter of law because under the undisputed facts, the discharge decision was not arbitrary, capricious, unsupported by substantial evidence or contrary to law.

### III

■ Wyatt's claims for reinstatement in the Army and for back pay for the period of his allegedly unlawful separation are within the Claims Court's jurisdiction, whether or not Wyatt (who is appearing *pro se*) pleads the basis for jurisdiction. *See Sargisson v. United States*, 913 F.2d 918, 920 (Fed.Cir.1990) (claims for reinstatement and back pay stemming from allegedly unlawful separation from active duty in the armed services are within the Claims Court's jurisdiction under 28 U.S.C. § 1491). In addition, although defendant does not raise the issue, we note that Wyatt was not required to exhaust available administrative remedies before bringing an action challenging his discharge. *See Mathis v. United States*, 183 Ct.Cl. 145, 148, 391 F.2d 938, *vac. on other gds.*, 183 Ct.Cl. 145, 394 F.2d 519 (1968) ("resort to the [Army] Discharge Review Board is permissive, not mandatory, and the same is true, *a fortiori*, of the [Army] Correction

Board"). *Accord Heisig v. United States*, 719 F.2d 1153, 1155 (Fed.Cir.1983).[7] Defendant's motion to dismiss for lack of jurisdiction should therefore be denied.

### IV

■ According to defendant, judicial review of the separation decision is foreclosed due to Wyatt's failure to seek relief before the Army Discharge Review Board.[8] A similar argument was made and rejected in *Krzeminski v. United States*, 13 Cl.Ct. 430 (1987), and we find the reasoning in *Krzeminski* persuasive. In that case, as here, the separated servicemember did not pursue review of his discharge before a discharge review board, nor did he seek relief before a records correction board. Instead, Krzeminski brought an action challenging the discharge directly in the Claims Court. The court initially noted that Krzeminski had never explicitly waived a right to non-administrative review of his discharge. 13 Cl.Ct. at 438. The same can be said of Wyatt. Furthermore, "[f]or th[e] principle [that administrative remedies are permissive, not mandatory] to have any meaning, a waiver of administrative remedies would not, absent a specific tie to court remedies, bar review here." *Id.* (citations omitted). Still, Wyatt's failure to seek administrative review of his discharge is not without consequences, as we discuss in the next section.

### V

■ Having determined that Wyatt has not waived his right to seek judicial review of his discharge, we must next determine the appropriate standard of review and the matters to be considered on review. When a former service member seeks review of a decision of a Board for Correction of Military Records denying the relief sought, the applicable standard of judicial

---

7. This is not the law in other circuits. *See, e.g., Navas v. Gonzales Vales*, 752 F.2d 765, 769 (1st Cir.1985) (in action for injunctive relief, exhaustion of intra-service administrative remedies required prior to judicial review of discharge decision); *Ballenger v. Marsh*, 708 F.2d 349, 350–51 (8th Cir.1983) (same); *Diliberti v. Brown*, 583 F.2d 950, 951 (7th Cir.1978) (same).

8. Defendant makes the related argument that Wyatt's failure to appeal the adverse decision in the first Article 15 proceeding bars him from raising in court the issue whether he disobeyed the order not to drive his car without insurance. In the following section we discuss the effect of Wyatt's election not to appeal the decision in the first Article 15 proceeding.

review is whether the Board's action was arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure. *Sanders v. United States,* 594 F.2d 804, 219 Ct.Cl. 285, 298 (1979). We see no reason why this standard should not apply here, even though we are reviewing the battalion commander's decision (as opposed to a decision of a discharge review board or a records correction board).[9]

■ Next, we must determine whether Wyatt has the right to present new evidence in the present proceeding, or whether we must confine our review to the administrative record. Judicial review in a wrongful discharge case is normally limited to the administrative record before the deciding official or officials. *Long v. United States,* 12 Cl.Ct. 174, 177 (1987).[10] Further, where "there has been no administrative appeal process ... [the separated servicemember] has waived the right to make an administrative record [and] has to rely [in a subsequent action for judicial review] on the evidentiary record before the deciding official." *Krzeminski, supra,* 13 Cl.Ct. at 437. We may go beyond the record and hear new evidence only if the evidence was unavailable below or if "plaintiff makes a

'strong showing of bad faith or improper behavior' that creates 'serious doubts about the fundamental integrity' of the administrative action." *Long, supra,* 12 Cl.Ct. at 177 n. 2 (quoting *Sierra Club v. Costle,* 657 F.2d 298, 390 n. 450 (D.C.Cir. 1981)).

■ Wyatt has raised the specter of bad faith or improper behavior—he alleges that he "recently learned" that unspecified officers "committed perjury and lied in the official statement to a board of inquiry"— but he has not made the *strong showing* required to trigger a right to present new evidence. Wyatt alleges in his complaint, filed October 12, 1990, that he never received an order not to drive his car without insurance; the apparent basis (and relevance, in Wyatt's view) for this allegation is that Wyatt's superiors said that such an order was given in order to hasten his discharge. However, Wyatt did not seek to overturn on the basis of bogus evidence the result in the first Article 15 proceeding, in which he was convicted of disobeying the order not to drive without insurance. Allegations of fraud before a deliberative body should be brought before the body which was the victim of the alleged fraud. *Roco-*

9. In *Voge v. United States,* 844 F.2d 776 (Fed. Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988), the court discussed a discrete category of claims challenging military personnel decisions which are within the Claims Court's jurisdiction but are subject to an even narrower standard of review, namely, whether the decision challenged was made according to prescribed procedures. The *Voge* court ruled that the Claims Court could review for procedural error only the Navy's denial of a medical officer's request for additional special pay; review of the substance of the decision presented a nonjusticiable question since there were "no tests or standards for the court to apply in determining whether the decision to terminate [additional special pay] is correct." 844 F.2d at 780. The Federal Circuit went on to say that "[c]ourts do not have the institutional competence to make the substantive determination that a particular medical officer is deserving of additional compensation." *Id.*

The *Voge* court contrasted the "relatively minor and routine military personnel decision" of denying additional special pay with "the denial of all pay and allowances through allegedly unlawful discharge from military service because

of statutory violations by the military departments." 844 F.2d at 780 n. 1. Review of the latter type of decision presents a justiciable question, and is reviewed under the *Sanders* standard. *Id.* Because our decision would be the same whether we applied the circumscribed *Voge* standard of review or the more rigorous *Sanders* standard, we need not decide whether the *Voge* standard should apply.

It should be noted that Wyatt has passed up the opportunity to have the propriety of his discharge considered by two bodies of experts in military personnel matters, the Army Discharge Review Board and the Army Board for Correction of Military Records.

10. *Cf. Poe v. United States,* 7 Cl.Ct. 40, 42 (1984) (although administrative remedies in wrongful discharge claim are permissive, where separated service member brought action seeking back pay, correction of records and reinstatement to active duty in the Air Force directly in Claims Court, court could remand action to Air Force Board for Correction of Military Records in order to afford body with expertise in military personnel matters an opportunity to develop factual record and to correct alleged errors).

*vich v. United States*, 933 F.2d 991, 995 n. 6 (Fed.Cir.1991).

More importantly, if, as Wyatt now alleges, he never received the order at issue, it is inexplicable how he "recently learned" that his superiors lied about giving the order; Wyatt would have known at the time of the first Article 15 proceeding in January 1986 of the alleged perjury. The bare allegation that people "lied ... to a board of inquiry," coupled with the dubious assertion that such lying was only "recently" discovered, falls far short of the strong showing required to allow Wyatt to present new evidence in this proceeding.[11] Thus, Wyatt will not be permitted to supplement the record.

## VI

■■■ As indicated above, the issue for decision is whether the battalion commander's decision to discharge Wyatt for unsatisfactory performance was arbitrary, capricious, in bad faith, unsupported by substantial evidence or contrary to law, regulation or published procedure. Our function in reviewing a discharge decision is not to substitute our judgment of the servicemember's fitness to serve in the armed forces for that of the discharging official. *Giglio v. United States*, 17 Cl.Ct. 160, 166 (1989). Instead, we will set aside Wyatt's discharge as arbitrary and capricious only if it was not based on relevant factors, lacked a rational basis or represents a clear error in judgment. *Bowman Transportation v. Arkansas–Best Freight System*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974) (explaining the scope of arbitrary and capricious review under the Administrative Procedure Act).

Under 10 U.S.C. § 1169, "[n]o regular member of an armed force may be discharged before his term of service expires, except—(1) as prescribed by the Secretary concerned...." Wyatt was discharged (before his term of service expired) under regulations promulgated by the Secretary of the Army pursuant to section 1169. Specifically, Wyatt was discharged under AR 635–200, Chap. 13, governing "Separation for Unsatisfactory Performance." Under ¶ 13–2, sub. a(1) of the regulation, "[c]ommanders will separate a member for unsatisfactory performance when it is clearly established that—in the commander's judgment, the member will not develop sufficiently to participate satisfactorily in further training and/or become a satisfactory soldier...."

Wyatt's commander considered seventeen items in reaching his judgment:

1. Letter notifying Wyatt of the proposed separation.
2. Results of a mental and physical evaluation of Wyatt.
3. Wyatt's Personnel Qualification Record.
4. January 17, 1986 counseling form.
5. December 3, 1985 counseling form.
6. November 27, 1985 counseling form.
7. January 21, 1986 report of Wyatt's arrest for DWI.
8. Rehabilitative transfer orders dated November 5, 1985.
9. November 12, 1985 Bar to Reenlistment Certificate.
10. November 5, 1985 dishonored check notification.
11. October 31, 1985 report of speeding ticket (on base).
12. October 24, 1985 letter from Wyatt's bank, demanding payment of auto loan and auto insurance premium.
13. October 18, 1985 dishonored check notification.

---

**11.** If the first article 15 proceeding was tainted by perjury, then Wyatt's conduct at the time of that proceeding is difficult to understand. The first Article 15 proceeding was instituted when Wyatt was accused of violating an order given by his battalion commander, LTC Rousek. Wyatt says he never received the order, so at the time of the Article 15 proceeding Wyatt knew the charge to be a false one. However, Wyatt declined to have his case considered by a jury in a court-martial proceeding, and instead elected to have his case decided *by LTC Rousek*, his supposed false accuser. Furthermore, Wyatt did not appeal LTC Rousek's decision to a judge advocate, as was his right.

14. February 26, 1985 letter suspending check cashing privileges.

15. February 27, 1985 report of Wyatt's arrest for interfering with a police officer and resisting arrest.

16. February 15, 1985 notice of indebtedness to Army.

17. February 3, 1986 DA Form 2627 [missing from record].

An administrative decision is arbitrary if the decisionmaker failed to consider all relevant evidence. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). However, to the extent that the battalion commander relied on incomplete information in approving the recommended discharge—the seventeen items explicitly relied upon do not include the many favorable EERs, for example—we note that when Wyatt was informed of the proposed separation he was given, and declined, the opportunity to present statements in his own behalf.

The decision we are reviewing was committed largely to the battalion commander's discretion; AR 635–200, ¶ 13–2, sub. a(1) is framed in terms of "the commander's judgment." The battalion commander reached the judgment that Wyatt's performance was unsatisfactory based on a string of incidents beginning in late 1985, as revealed in the seventeen items considered: Wyatt was having trouble managing his finances, set a poor example for others, disobeyed an order, would not accept his non-judicial punishment and was arrested off base twice while under the influence of alcohol. We cannot say that in the face of these incidents, the judgment that Wyatt "would not develop sufficiently to participate satisfactorily in further training and/or become a satisfactory soldier" lacked a rational basis or represented a clear error in judgment. Indeed, disturbing the battalion commander's decision would amount to substituting our judgment for his. Further, the seventeen items considered in support of the recommended discharge constitute substantial evidence,

and there is nothing to indicate that the decision was made in bad faith.

Further buttressing the battalion commander's judgment regarding Wyatt's future performance was the fact that Wyatt was given a chance to mend his ways before his separation but failed to do so. Attempts were made at rehabilitation in accordance with AR 635–200, ¶ 13–4, which provides that separation for unsatisfactory performance will not be initiated "unless there have been efforts at rehabilitation." On November 27, 1985, Wyatt was counseled for being late for duty, being out of uniform, and generally for setting a poor example.[12] One week later Wyatt was given a "rehabilitative transfer" from Company C to Company B. On January 16, 1986, Wyatt was counseled in connection with his arrest one day earlier on charges of driving while intoxicated; Wyatt was advised that any future "alcohol related incident" could result in "action to separate you from the service...., [and] such action could result in the issuance of a less than honorable discharge." Following this warning, Wyatt was arrested off base and charged with interfering with a police officer and resisting arrest; the report of the incident states that Wyatt had alcohol on his breath at the time of the arrest.

Finally, the separation decision was in accordance with statute and regulation. As indicated above, Congress has given the secretaries of the armed forces explicit statutory authority to prescribe regulations governing discharge of an enlisted servicemember before his term of service expires. 10 U.S.C. § 1169. AR 635–200, chapter 13, section II sets forth the procedures to be followed in such discharges, and the record shows that the prescribed procedures were followed. Paragraph 13–5 requires that the servicemember be notified of the proposed separation, and that the notice contain information required under ¶ 2–2 (pertaining to the servicemember's rights); on February 14, 1986 Wyatt acknowledged in writing receiving the notification of the proposed separation, and the notice meets

---

**12.** Counseling sessions are summarized in writing, with the individual counseled acknowl-

edging that he understands the reasons for the counseling.

the requirements of ¶ 2–2. Paragraph 13–5 further requires that a medical examination and mental evaluation be performed; on January 16, 1986 a medical examination and mental evaluation were performed.

Under ¶ 13–7, the immediate commander must prepare a report regarding the proposed separation for unsatisfactory performance containing fourteen specific pieces of information. Wyatt's company commander prepared such a report with the required information and forwarded the report to the battalion commander under ¶¶ 13–7 and 13–9. The battalion commander approved the recommended separation under ¶ 13, sub. d(1). Thus, the prescribed regulations were followed.

Pursuant to ¶ 13–11, the battalion commander had the authority to issue an Honorable Discharge or a General Discharge (under honorable conditions). The battalion commander chose the latter, and having concluded that the discharge was not wrongful and that Wyatt is therefore not entitled to back pay, we express no opinion as to whether the battalion commander properly characterized the discharge. The Claims Court's jurisdiction to grant non-monetary relief is tied to the entry of a money judgment. *See* 28 U.S.C. § 1491(a)(2) ("[t]o provide an entire remedy and to complete the relief afforded by the judgment, the [Claims C]ourt may, as an incident of and collateral to any such judgment, issue orders directing ... correction of applicable records ..."). Because a conclusion that Wyatt's discharge was improperly characterized would not entitle Wyatt to compensation from the United States, we have no occasion to consider whether a General Discharge was the proper characterization.

### VII

For the foregoing reasons, the battalion commander's decision to discharge Wyatt cannot be set aside. Defendant's motion to dismiss for lack of jurisdiction is DENIED, and defendant's motion for summary judgment is GRANTED.

Accordingly, judgment shall be entered in favor of defendant. Pursuant to RUSCC

54(d), costs shall be allowed to the defendant ("the prevailing party").