Barrie L. NEUTZE, Plaintiff, pro se

v.

The UNITED STATES, Defendant.

No. 08–442C.

United States Court of Federal Claims.

Aug. 31, 2009.

Barrie L. Neutze, Plaintiff, pro se.

Joseph Alan Pixley, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

SUSAN G. BRADEN, Judge.

## I. RELEVANT FACTS.[1]

On November 1, 2000, Plaintiff enrolled in the Army ROTC program at the Massachusetts Institute of Technology and executed an Army Senior Reserve Officers' Training Corps Scholarship Cadet Contract to serve for eight years ("ROTC Scholarship Contract"). AR 82. In exchange, Plaintiff received a maximum annual tuition assistance of $20,000 for each of four academic years. *Id.* The ROTC Scholarship Contract required, however, that Plaintiff comply with the Army Weight Control Program and pass the Army Physical Fitness Test ("APFT"),

---

1. The facts recited herein were derived from: the June 16, 2008 Complaint ("Compl."); Plaintiff's Exhibits In Support ("Pl. Ex. A–M"); and the October 17, 2008 Administrative Record ("AR").

prior to the end of the final school term of her Military Science HI year. AR 83. Plaintiff agreed that, if she was disenrolled from the Reserve Officer Training Corps ("ROTC") for "failing to comply with other terms and conditions of this [C]ontract," or "[o]ther disenrollment criteria established now or in the future by Army regulations," the Secretary of the Army or a designee may "order [Plaintiff] to active duty as an enlisted soldier for a period of not more than four years, or in lieu of being ordered to active duty, may require [Plaintiff] to reimburse the United States through repayment of an amount of money, plus interest, equal to the entire amount of financial assistance paid by the United States for my advanced education." AR 87.

By the second semester of her third year Plaintiff was selected as an ROTC Company Executive Officer, making her the highest ranking female Cadet in her Battalion. Compl. ¶ 6. Despite this achievement, Plaintiff was warned on several occasions that she was at risk of losing her scholarship, if her physical fitness failed to improve. AR 87, 96, 98, 100–01. After Plaintiff passed the APFT in May 2003, she received orders to attend the National Advanced Cadet Leadership Course ("NALC") at Fort Lewis, Washington. AR 4. All senior level cadets were required to complete the NALC to receive a commission after graduation. Id.

On June 13, 2003, the Army arranged for Plaintiff to travel from Gatwick Airport, outside of London where she lived at the time, to Seattle via Cincinnati. Compl. ¶ 7. Because of flight and related delays, Plaintiff arrived at Fort Lewis, after traveling more than 24 hours. Id. On June 14, 2003, Plaintiff completed processing at Fort Lewis. Compl. ¶ 8. Two days later, Plaintiff and other cadets took the initial APFT. Id. She failed. Compl. ¶ 6. Although Plaintiff scored 200 points cumulatively, she was three sit-ups short of the required minimum. AR 4. Cadets who fail the initial APFT can be retested within three days. Pl. Ex. E–1. The NALC Commandant, however, afforded Plaintiff only a day of rest before the retest. Compl. ¶ 9.

On June 18, 2003, Plaintiff and her Platoon allegedly were required to do sporadic push-ups and an hour of physical training, including 25 flutter kicks, 20 side straddle hops, and a long run. AR 4 ¶ 7. Following these exercises, Plaintiff and her Platoon allegedly were not given adequate time to stretch. Id. That afternoon, Plaintiff's Platoon was required to hold a front leaning rest position and perform flutter kicks and leg lifts every 3 to 10 minutes during a one hour period. Id.

On June 19, 2003, Plaintiff failed the APFT retest. AR 103. Plaintiff was not eligible to receive a final opportunity to pass the APFT, because she failed both the push-up and sit-up portions of the retest. Pl. Ex. E–1.

On July 2, 2003, Plaintiff received notice that disenrollment proceedings were being initiated. AR 48. In response, Plaintiff requested the appointment of an Investigating Officer. Compl. ¶ 12. On September 30, 2003, Plaintiff's ROTC Commander appointed an Investigating Officer to determine whether Plaintiff should be retained and the amount of her scholarship debt. AR 50. The investigation was set to commence on October 6, 2003 and conclude on October 20, 2003. AR 43.

Plaintiff asked to be retained, even without the scholarship, and allowed to earn her commission. Compl. ¶ 13. In response, Plaintiff was offered an opportunity to take another APFT to assess her level of fitness. AR 5. Plaintiff asked if she could take the test two days later, since she was then fasting for religious reasons. Id. The Investigating Officer explained that was not possible, because October 22, 2003 exceeded the investigation's designated termination date. Id. Plaintiff agreed to take the APFT on October 20, 2003, and again failed. Id.

On October 20, 2003, the Investigating Officer concluded that Plaintiff did not voluntarily fail to complete the requirements of the ROTC Contract nor did she do so as a result of misconduct. AR 43–45. That Report also noted that Plaintiff understood the consequences if she failed the APFT. Id. Although Plaintiff passed 3 prior APFTs, she also failed 4 APFTs within a 22–month period. Id. Therefore, the Investigating Officer

concluded that Plaintiff should not be retained in the ROTC, either as a scholarship or non-scholarship cadet and should be disenrolled, pursuant to ROTC UP AR 145–1, para. 3–43(a)(10). *Id.* In addition, the Investigating Officer recommended that Plaintiff be ordered to repay her scholarship debt. *Id.* The Battalion Commander approved the Investigating Officer's findings and recommendations. AR 46.

On April 6, 2004, Plaintiff's disenrollment was approved by the Commanding General of the United States Army Cadet Command. AR 19. On April 20, 2005, the Deputy Chief of Staff of the Department of the Army denied Plaintiff's interim appeal, found the amount of scholarship debt was $61,710, and ordered that she repay that amount. AR 11. On April 22, 2005, Plaintiff received a notice from the Director of Military Personnel Management confirming the validity of her debt. AR 10.

In August 2005, Plaintiff appealed to the Army Board of Correction of Military Records ("ABCMR") for correction of her military records to reflect that she did not owe the $61,710 scholarship debt. Compl. ¶ 14; Pl. Ex. J. On July 5, 2006, the ABCMR unanimously denied Plaintiff's appeal. AR 1–7.

## II. PROCEDURAL HISTORY.

On June 16, 2008, Plaintiff filed a Complaint in the United States Court of Federal Claims alleging that her disenrollement from the ROTC was improper and requesting that the court "issue an order confirming that Plaintiff is not indebted to the United States as the result of her service in the Army ROTC." Compl. ¶ 38. On October 17, 2008, the defendant ("Government") filed a Motion To Dismiss Or, In the Alternate, Motion For Judgment Upon The Administrative Record ("Gov't Mot. Dis."). On the same date, the Government also filed the Administrative Record.

On November 17, 2008, Plaintiff filed a Motion To Amend [the June 16, 2008] Complaint, to add jurisdictional grounds. On November 20, 2008, the court granted Plaintiff's Motion To Amend. Plaintiff, however, failed to file an Amended Complaint thereafter.

On December 18, 2008, Plaintiff filed a Response to the Government's Motion and a Cross–Motion For Judgment On The Administrative Record ("Pl. Resp."). On March 9, 2009, the Government filed a Response ("Gov't. Resp.") to Plaintiff's December 18, 2008 Cross–Motion. On May 28, 2009, Plaintiff filed a Reply ("Pl. Reply").

## III. DISCUSSION.

### A. Jurisdiction.

■ The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages ... the Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (citations omitted). Therefore, to pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *Todd v. United States,* 386 F.3d 1091, 1094 (Fed.Cir.2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States,* 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc* ) ("The Tucker Act ... does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages. In the parlance of

Tucker Act cases, that source must be 'money-mandating.' ") (citations omitted).

The United States Court of Federal Claims has authority to ascertain the procedural validity of a military decision that affects a monetary entitlement. *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir. 1995). In this case, the June 16, 2008 Complaint alleged jurisdiction under the Military Pay Act, 37 U.S.C. § 204(a)(1), for basic pay lost as a result of her improper disenrollment. Accordingly, the court had jurisdiction to adjudicate the claims asserted therein.

### B. Justiciability.

When the merits of a final military decision is challenged, however, the court is obligated first to consider the justiciability of the legal question presented. *Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the [military]. The responsibility for setting up channels through which such grievances can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates."); *see also Heisig v. United States*, 719 F.2d 1153, 1156 (Fed.Cir.1983) ("[A]lthough judicial review of military service determinations with monetary consequences is available ... '[r]eview of the administrative decision is limited to determining whether the ... action was arbitrary, capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which [the complainant] has been seriously prejudiced.' "). The court "will not disturb the decision of [a] corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.' " *Barnes v. United States*, 473 F.3d 1356, 1361 (Fed.Cir.2007) (quoting *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed.Cir.2005)).

### C. *Pro Se* Pleading Requirements.

In the United States Court of Federal Claims, the pleadings of a *pro se* plaintiff are held to a less stringent standard than those of litigants represented by counsel.

*Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (stating that *pro se* complaints, "however inartfully pleaded," are held to "less stringent standards than formal pleadings drafted by lawyers[.]" (quotation and citation omitted)). Indeed, it has been the tradition of the court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States*, 188 Ct.Cl. 456, 412 F.2d 1285, 1292 (1969). Nevertheless, while the court may excuse ambiguities in a pro se plaintiff's complaint, the court "does not excuse [a complaint's] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir. 1995).

### D. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(1).

A challenge to the "[United States Court of Federal Claims'] general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke*, 60 F.3d at 797. Nonetheless, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question ... [plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### E. Standard For Decision On A Motion To Dismiss, Pursuant To RCFC 12(b)(6).

On May 18, 2009, the United States Supreme Court issued *Ashcroft v. Iq-*

*bal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), restating the pleading standard previously discussed in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face," *i.e.,* sufficient factual content must be pled on which a court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). The Court explained that the plausibility standard "asks for more than a sheer possibility that [the] defendant has acted unlawfully." *Id.* "Plausibility of 'entitlement to relief'" requires more than pleading facts that are "merely consistent with" a defendant's liability. *Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

In *Iqbal,* the Court discussed, in detail, the "two working principles" of *Twombly's* heightened pleading requirements. *Id.* First, although factual allegations alleged must be accepted as true, the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949–50 (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). Accordingly, the Court advised trial courts to begin their analysis "by identifying the allegations [of law] in the complaint that are not entitled to the assumption of truth." *Id.* at 1951. If the legal allegations are of a "conclusory nature," they are not entitled to the presumption of truth. *Id.* Second, to survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a complaint also must state a "plausible claim for relief." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955). Here, factual allegations are examined to determine "if they plausibly suggest an entitlement to relief." *Id.* at 1951.

**F. Standard For Judgment On The Administrative Record, Pursuant To RCFC 52.1.**

The standard of review on the administrative record, pursuant to RCFC 52.1, is similar but not identical to a motion for summary judgment under RCFC 56. *Bannum, Inc. v. United States,* 404 F.3d

1346, 1355 (Fed.Cir.2005). The standard for a motion for summary judgment is whether the moving party has proved its case as a matter of fact and law or whether a genuine issue of material fact precludes judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). In contrast, the standard for judgment on the administrative record is narrower, *i.e.,* given all the disputed and undisputed facts in the administrative record, whether the plaintiff has met the burden of proof to show that the decision was not in accordance with the law. *Bannum,* 404 F.3d at 1357 (instructing the court to make "factual findings under RCFC 56.1 from the [limited] record evidence as if it were conducting a trial on the record."). The existence of a material question of fact neither precludes granting a motion for judgment on the administrative record, nor requires the court to conduct evidentiary proceedings. *Id.* A plaintiff also must establish a deficiency with "cogent and clearly convincing evidence," overcoming the strong presumption that the Government discharged its duties "correctly, lawfully, and in good faith." *Martinez v. United States,* 77 Fed.Cl. 318, 324 (2007) (citations omitted); *Wyatt v. United States,* 23 Cl.Ct. 314, 319 (1991) (holding that review of a military correction board's decision is limited to the administrative record before the deciding official or officials).

**G. The Government's October 17, 2008 Motion To Dismiss, Pursuant To RCFC 12(b)(1).**

**1. The Government's Argument.**

The Military Pay Act, 37 U.S.C. § 204(a), cannot be invoked by Plaintiff, because she was never on active duty. Gov't Mot. Dis. at 13. Thus, the court does not have jurisdiction to provide relief based upon Plaintiff's "expectation of a commission as a second lieutenant, which was within the Army's discretion to either grant or deny." *Id.* (citing

*Martinez v. United States,* 26 Cl.Ct. 1471, 1474 (1992)). The Government also maintains that Plaintiff cannot invoke the court's jurisdiction under 10 U.S.C. § 2005(a), because that statute is not money mandating. *Id.* at 10, 12. Nor does it provide for a private right of action. *Id.* at 12. Likewise, the Government argues that the court does not have jurisdiction, because the June 16, 2008 Complaint does not seek money damages, but rather a declaratory judgment that "the Plaintiff is not indebted to the United States." Gov't Mot. Dis. at 10 (quoting Compl. ¶ 38).

### 2. The Plaintiff's Response.

Plaintiff responds that the court has jurisdiction, pursuant to the Military Pay Act, 37 U.S.C. § 204(a)(1) (basic pay), and 10 U.S.C. § 2005(a), as alleged in the June 16, 2008 Complaint. Pl. Resp. at 6–7. In addition, Plaintiff's November 17, 2008 Motion To Amend [the June 16, 2008] Complaint included 10 U.S.C. § 2104 (advanced training), 10 U.S.C. § 2107(c)(1) (tuition assistance), and 37 U.S.C. § 209(a)(2) (subsistence payments to ROTC cadets) as additional jurisdictional grounds. *Id.*

Plaintiff particularly emphasizes that the court has jurisdiction over her claim for relief from recoupment of scholarship tuition payments made under 10 U.S.C. § 2107(c)(1). Pl. Resp. at 8 ("The Secretary of the military department concerned may provide for the payment of all expenses in his department of administering the financial assistance under this section, including tuition, fees, books, and laboratory expenses."). Although 10 U.S.C. § 2107 uses permissive language, as long as Plaintiff remained in good standing with the ROTC, this statute mandates that ROTC pay Plaintiff's tuition. *Id.* at 8.

### 3. The Government's Reply.

The Government replies that the June 16, 2008 Complaint does not cite either 10 U.S.C. § 2107(c)(1) (tuition assistance) or 37 U.S.C. § 209(a)(2) (subsistence payments to ROTC cadets) as a basis for jurisdiction. Gov't. Resp. at 5. Assuming *arguendo* that the Complaint is amended, Plaintiff, nevertheless, has waived the right to raise "subsistence allowance" and "tuition" claims, be-

cause they were not previously raised before the ABCMR. *Id.* at 5–6.

Under 10 U.S.C. § 1201, the statute at issue in *Fisher,* states: "upon a determination by the Secretary concerned that a member described in subsection (c) [i.e., on active duty] is unfit to perform the duties ... because of physical disability, the Secretary may retire the member." *Id.* (quoting 10 U.S.C. § 1201). Although the United States Court of Appeals for the Federal Circuit held that the term "may" in Section 1201 affords a service Secretary absolute discretion to terminate a member's active duty if the Secretary finds a qualifying disability and chooses to terminate service for this reason, the Secretary " 'has no discretion whether to pay out retirement funds.' " *Id.* Therefore, the Federal Circuit has held that despite the inclusion of the term "may" in the 10 U.S.C. § 1201, the statute is "understood as money-mandating." *Id.* (citing *Fisher,* 402 F.3d at 1174). In contrast, the term "may" has a different effect in 10 U.S.C. § 2107(c)(1), the statute at issue in this case. *Id.* at 10. 10 U.S.C. § 2107(c)(1), does not include any language indicating that payment of tuition is mandatory. *Id.* Therefore, Plaintiff improperly argues that 10 U.S.C. § 2107(c)(1) entitles her to tuition payments, regardless of her status in the ROTC. *Id.*

### 4. The Plaintiff's Reply.

On November 20, 2008, the court granted Plaintiff's motion to amend the June 16, 2008 Complaint to assert claims under 10 U.S.C. § 2104, 10 U.S.C. § 2107(c)(1), and 37 U.S.C. § 209(a)(2). Pl. Reply at 1. Therefore, the court has jurisdiction to adjudicate these claims as well. *Id.* The issue of unpaid subsistence allowance and tuition payments were raised during the ABCMR proceedings, since Plaintiff's entitlement to this monetary relief inherently is intertwined with her disenrollment. *Id.* Therefore, by raising the propriety of her disenrollment at the ABCMR, Plaintiff raised the issue of entitlement to the unpaid subsistence allowance and tuition payments. *Id.* at 2.

Plaintiff further contends that the Government's misreading of *Fisher* has led to the incorrect conclusion that the 10 U.S.C. § 2107(c)(1) is not money mandating, because

of its permissive language. *Id.* at 4. Although 10 U.S.C. § 2107(c)(1) does not obligate the Secretary to provide ROTC scholarships and the Secretary retains discretion to withdraw an offer for any reason prior to entering into a ROTC Contract, once the ROTC Contract is effective, the Secretary can only terminate the contract and withhold tuition assistance, pursuant to the terms thereof and governing regulations. *Id.* at 5. In other words, once a ROTC Contract is signed, tuition becomes an "entitlement" and 10 U.S.C. § 2107(c)(1) "can be fairly interpreted in mandating compensation" when tuition is withheld. *Id.*

Moreover, regardless of whether 10 U.S.C. § 2107(c)(1) or 37 U.S.C. § 209(a)(2) are money mandating, the court has jurisdiction over Plaintiff's claims under the Tucker Act, because Plaintiff's ROTC agreement is a "contract." *Id.* at 7.

### 5. The Court's Resolution.

On November 17, 2008, Plaintiff filed a Motion To Amend the June 16, 2008 Complaint, also to plead claims under 10 U.S.C. § 2104 (advanced training), 10 U.S.C. § 2107(c)(1) (tuition assistance), and 37 U.S.C. § 209(a)(2) (subsistence payments to ROTC candidates). Pl. Mot. to Am. at 1. On November 20, 2008, the court granted that motion. Although Plaintiff did not subsequently file an Amended Complaint, the court deems the June 16, 2008 Complaint as having been amended to allege 10 U.S.C. § 2104, 10 U.S.C. § 2107(c)(1) and 37 U.S.C. § 209(a)(2) as potential bases for jurisdiction. *Hughes,* 449 U.S. at 9, 101 S.Ct. 173 (The pleadings of *pro se* litigants are "held to a less than formal pleadings drafted by lawyers.").

### H. The Government's October 17, 2008 Motion To Dismiss, Pursuant To RCFC 12(b)(6).

#### 1. The Government's Argument.

Assuming the court construes the June 16, 2008 Complaint to add both 10 U.S.C. § 2104, 10 U.S.C. § 2107(c)(1), and 37 U.S.C. § 209(a)(2) for jurisdictional foundation, none of these statutes authorizes the principal relief requested, *i.e.,* alleviation of Plaintiff's debt to the Government. Gov't Mot. Dis. at

16. Therefore, assuming that all the facts in the June 16, 2008 Complaint, as amended, are true, a claim upon which the court can grant relief has not been properly pled. *Id.*

#### 2. The Plaintiff's Response.

The court has jurisdiction over Plaintiff's claims for the correction of her military record, because, under 10 U.S.C. § 1491(a)(2): "The court may, as an incident of and collateral to any such judgment issue orders directing, restoration to office or position, placement in appropriate duty, or retirement status, and correction of applicable records and such order may be issued to any appropriate official of the United States." Pl. Resp. at 8–9. Therefore, the court is authorized to afford the requested relief. *Id.*

#### 3. The Court's Resolution.

 *Iqbal* held that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 129 S.Ct. at 1949. The June 16, 2008 Complaint, as amended, survives this threshold. Likewise, the complaint must state a "plausible claim for relief." *Id.* at 1950. The authority of the United States Court of Federal Claims arguably does not include jurisdiction to "issue an order confirming that Plaintiff is not indebted to the United States as a result of her service in the Army ROTC." Compl. at 26. In *Iqbal,* the Court did not specifically overrule or distinguish *Hughes.* Therefore, assuming such a claim for relief could be pled more artfully so as to be construed to afford money-mandating relief, the court has determined that the June 16, 2008 Complaint, as amended, can survive a challenge under RCFC 12(b)(6), but only because it is *pro se. Hughes,* 449 U.S. at 9, 101 S.Ct. 173.

### I. The Government's October 17, 2008 Motion For Judgment On The Administrative Record And Plaintiff's December 18, 2008 Cross–Motion For Judgment On The Administrative Record.

#### 1. The Government's Argument.

The Government argues that Plaintiff's disenrollment from the ROTC was warranted. Gov't Mot. Dis. at 18. Pursuant to Army

Reg. 145–1, ¶ 3–43a(16), a "breach of scholarship contract occurs 'regardless of whether the act, performance or nonperformance was done with specific intent to breach the contract.'" *Id.* at 19. Even though Plaintiff's failure to pass the APFT "may not have been voluntary or the result of misconduct," she was aware of this requirement and her repeated failure to pass the APFT warranted disenrollment. *Id.*

With respect to the contention that Plaintiff failed the June 16, 2003 APFT as a result of "jet lag," Plaintiff never presented any such evidence either to the Investigating Officer or the ABCMR. *Id.* Moreover, the ABCMR correctly determined that Plaintiff's difficulty with the APFT began "long before attending NALC." AR 6 ¶ 1. Over a 22 month period, Plaintiff failed 4 out of 7 APFTs. *Id.* Nevertheless, Plaintiff was given another opportunity to re-take the APFT after ROTC disenrollment. *Id.* at 20. Although Plaintiff insists that she failed the last APFT, because she was fasting for a religious holiday, the ROTC Contract required Plaintiff to "'take whatever measures are necessary [to] continue to meet those standards until the date [Plaintiff becomes] a commissioned officer.'" AR 83 ¶ 1i.

The Government also argues that the court should disregard Plaintiff's claims about the Army's failure to promulgate waiver standards for scholarship debt, because the Plaintiff never raised this issue in the ABCMR proceeding. *Id.* at 24. Likewise, the ABCMR decision was not arbitrary and capricious, because it dismissed her contention that it is "unfair" for the Army to recoup tuition payments from cadets who complete their first year of training, since cadets who depart earlier are not subject to the same obligations. *Id.* at 25. There is nothing in the Plaintiff's ROTC Contract that requires the Army to waive her scholarship debt. *Id.* Instead, the ROTC Contract authorizes the "Secretary of the Army or his designee" to order Plaintiff "to active duty as an enlisted soldier for a period of not more than four years" or, to require her to "reimburse the United States" for the entire amount of her scholarship debt, if a term of the contract is breached. *Id.* (citing AR 87 ¶ 7). Therefore, the Army's decision to recoup scholarship monies paid for Plaintiff's tuition was a proper exercise of discretion authorized by the ROTC Contract. *Id.* at 26.

### 2. The Plaintiff's Response.

Plaintiff's principal response is the ROTC violated FM 21–20 by improperly administering the two APFTs that she failed. Pl. Resp. at 10. The first APFT, sixty hours after the Plaintiff arrived at NALC, violated FM 21–20 that prohibits testing when a cadet is fatigued. *Id.* At the time of this APFT administration, the Plaintiff was still suffering the fatigue associated with the "well known physiological phenomena" of jet lag from her military ordered trip across eight time zones within the span of 24 hours. *Id.* at 10–11.

Plaintiff contends that the assertions contained in her sworn affidavit are sufficient to overcome the presumption of regularity that accompanies the actions of government officials. *Id.* at 11–12. Nevertheless, the ABCMR found that Plaintiff's affidavit, describing the circumstances of her travel and the physical training that preceded her initial APFT and retest, in the absence of other evidence, did not support allegations that ROTC regulations were not followed. *Id.* at 12. Plaintiff's affidavit, however, was the only evidence presented regarding the ROTC's compliance with FM 21–20. *Id.* Moreover, the immediacy of the disenrollment order sending Plaintiff home prevented the collection of additional evidence to corroborate her statements. *Id.* Therefore, her sworn affidavit alone overcomes the presumption of regularity. *Id.* at 13–14.

The ABCMR also acted arbitrarily and capriciously when it failed to address whether FM 21–20 prohibits the administration of the APFT to individuals who are fatigued. Pl. Resp. at 23. Fatigue is a common symptom of jet-lag. *Id.* The administration of both the initial APFT and retest occurred during a typical recovery period for a trip through eight time zones. *Id.* Therefore, the administration of these APFTs violated FM 21–20, because the Plaintiff was fatigued.

*Id.*[2] Moreover, the ABCMR acted arbitrarily and capriciously when it concluded that jet lag was not the actual cause of her APFT failure. Pl. Resp. at 22–23. Instead, the ABCMR should have relied on the Plaintiff's test scores from the APFT administered six weeks prior to the Plaintiff's arrival at NALC. *Id.* Furthermore, the ABCMR did not address Plaintiff's allegations that the rigorous physical training preceding the re-test negatively impacted her performance. *Id.* at 24. The 43 point decrease in the Plaintiff's score over three days is prima facie evidence that "the intense and punitive training regime" substantially affected the Plaintiff's ability to pass the APFT. *Id.* Plaintiff also alleges that the ABCMR acted arbitrarily and capriciously by failing to address her contentions that several violations occurred during the administration of the re-test. *Id.*

Finally, the version of Section 2005(a)(3) effective at the time Plaintiff joined the ROTC, provided that the Secretary can only require recoupment, if the individual's failure to complete active duty is voluntary or due to misconduct. Pl. Resp. at 28. A subsequent amendment to 10 U.S.C. § 2005(a)(3) removed the limiting language of "voluntarily or because of misconduct" and instead authorized the Secretary to require reimbursement only "if such person does not complete the period of active duty specified in the agreement, or does not fulfill any term or condition prescribed pursuant to paragraph (4)[.]" *Id.* Therefore, Plaintiff argues that 10 U.S.C § 2005(a)(3) should be read to allow recoupment only if an individual's discharge is voluntary or resulted from misconduct. *Id.* at 29. The Investigating Officer's specific finding that Plaintiff's failure to pass the APFT was neither voluntary nor the result of misconduct precludes the Government from seeking recoupment. *Id.* at 28–30.

### 3. The Government's Reply.

The Government replies, assuming *arguendo* that the court has jurisdiction over Plaintiff's claims, Plaintiff "cannot overcome her heavy burden of proving that ABCMR acted arbitrarily and capriciously, contrary to law or regulation, or that its decision was not supported by substantial evidence." Gov't. Resp. at 10. In response to Plaintiff's contention that the presumption of regularity was overcome by Plaintiffs' affidavit, the Government replies there is substantial evidence to support the ABCMR's conclusion that Plaintiff's difficulty with physical fitness tests began "long before arriving at NALC." *Id.* (quoting AR 6 ¶ 1). Therefore, the ABCMR explicitly disregarded Plaintiff's contentions that she failed both APFTs due to jet lag. *Id.* at 13. In fact, Plaintiff failed the APFT four months later when she recovered from jet lag and should have been "fully committed to passing the APFT." *Id.* (quoting AR 6 ¶ 2). Therefore, Plaintiff's assertions that her affidavit was the "only available evidence" is incorrect, because the Board also relied on Plaintiff's prior failures of the APFT. *Id.*[3]

---

2. Plaintiff argues that the court should take judicial notice of the existence of jet lag and the associated fatigue as an adjudicative fact under the provisions of Rule 201 of the Federal Rules of Evidence. Pl. Resp. at 22. According to Fed. R. Ev. 201, judicially noticeable facts must be: (1) generally well known within the territorial jurisdiction of the trial court; and (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Id.* at 22. Jet lag and the accompanying fatigue are "well known phenomena." *Id.* at 22. In addition, the recovery time of one day per time zone is capable of being confirmed from several credible web sites, such as those of the Mayo Clinic and National Sleep Foundation. *Id.*

3. In addition, Plaintiff incorrectly and improperly relies upon *Dean* and other related cases to demonstrate that her affidavit alone is enough to overcome the presumption of regularity. *Id.* According to the Government, the *Dean* line of cases are distinguishable. *Id.* at 14 (citing *Dean v. U.S.*, 10 Cl. Ct. 563 (1986); *McCarthy v. United States* 10 Cl.Ct. 573 (1986), *Kelly v. United States*, 10 Cl.Ct. 579 (1986)). First, the *Dean* line of cases all pertain to the Survivor Benefit Plan, and not failure to pass the APFT. *Id.* Secondly, the instant case, unlike *Dean*, does not involve a "notice" requirement. Furthermore, unlike the military services in the *Dean* line of cases, the ABCMR never refers to a "presumption of regularity" or justifies its decision based on "normal procedure." *Id.* Instead, the ABCMR concluded that there was insufficient evidence to demonstrate that any regulatory guidelines were violated based upon Plaintiff's history of poor physical fitness performance. *Id.* at 15. Therefore, the Plaintiff's invocation of the *Dean* line of cases is inappropriate. *Id.*

The Government also contends that Plaintiff cannot raise any new argument that she failed to raise before the ABCMR. *Id.* Even though the Investigating Officer gave Plaintiff the "opportunity to add any remarks that she felt needed to be included," she did not follow-up, but instead attributed her poor performance to insufficient time to acclimate to the weather in Ft. Lewis, Washington. *Id.*

Plaintiff also failed to demonstrate any regulatory violations in the ABCMR proceedings. *Id.* FM 21–20 concerns the Army's general fitness program, not the APFT. *Id.* The only relevant section of the FM 21–20 that Plaintiff cites states that: "(1) soldiers are not tested when fatigued or ill; (2) soldiers do not have tiring duties prior to taking the APFT; and (3) in the case of test failure, commanders may allow soldiers to retake the test as soon as the soldiers and commanders feel they are ready." *Id.* at 17 (citing Pl. Resp. at 4 (quoting FM 21–20 at 14–8, 14–11)). The record reflects, however, that Plaintiff never told her military superiors she was too "fatigued or ill" to take the APFT. *Id.* Therefore, Plaintiff's request that the court take judicial notice of the effect of "jet lag" at this juncture is highly inappropriate given that the scope of the court's review of ABCMR's decision is limited to the Administrative Record. *Id.* at 18. Since the ABCMR specifically found that jet lag did not cause Plaintiff's failure of the APFT, the court would have to "substitute its judgment" and decide that the ABCMR improperly weighed the evidence. *Id.*

As a matter of law, the Government is entitled to seek recoupment of scholarship tuition paid, because Plaintiff failed to fulfill the specific "term and condition" in the ROTC Contract, requiring that she pass the APFT prior to end of her Military Science III year. *Id.* at 21. Plaintiff improperly relies on *United States v. Gears,* 835 F.Supp. 1093 (N.D.Ind.1993) and *United States v. McCrackin,* 736 F.Supp. 107 (D.S.C.1990) to establish that the Government does not have a statutory basis upon which to "predicate Plaintiff's indebtedness to the United States." *Id.* at 23. Both *Gears* and *McCrackin* applied earlier versions of 10 U.S.C.

§ 2005(a)(3), that did not contain the phrase "or fails to fulfill any term or condition pursuant to clause (4)," that *did* exist in the 1993 version of 10 U.S.C. § 2005(a)(3) applicable in 2000 when Plaintiff joined the ROTC. *Id.* Therefore, the Government is authorized to recoup scholarship tuition paid, when a ROTC Contract is breached, whether or not the breach was voluntary or due to misconduct. *Id.* at 24. Moreover, assuming a 2006 version of 10 U.S.C. § 2005(a)(3) imposes a more stringent burden on the Government, it is not retroactive. *Id.* (citing *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988)).

The ROTC Contract language is precise and clear. "[I]f I am disenrolled from the ROTC program for any reason ... I may, at the discretion of the Army, be directed, in lieu of being ordered to active duty as private (E1) ... to reimburse the United States through repayment of any amount of money, plus interest, equal to the entire amount of financial assistance paid by the United States through repayment of any amount of money, plus interest, equal to the entire amount of financial assistance paid by the United States for the advanced education from the commencement of this contractual agreement to the date of my disenrollment." AR 88 ¶ 9. *Plaintiff breached an expressed term of the ROTC Contract by failing the APFT. Id.* at 26. Therefore, the Secretary was authorized to require reimbursement, because the ROTC Contract specifically provided for recoupment in the event that she failed to fulfill the terms thereof. *Id.*

### 4. The Court's Resolution.

A plaintiff seeking relief from a Correction Board determination, is bound by that determination, unless a plaintiff can prove "that the Correction Board's decision was illegal because it was arbitrary or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due." *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 811 (1979) (citations omitted). In evaluating a Board decision, the

court may not consider new arguments not raised before the Board. *Id.* Therefore, Plaintiff now cannot raise the ROTC's failure to issue standards for the waiver of ROTC scholarship debt, or the "fairness" of requiring recoupment from some cadets but not others, because these issues were not presented to the ABCMR.

■ As for the ABCMR's decision, Plaintiff argues that the Army failed to follow Army Field Manual 21–20 regulations in administering the APFT. Pl. Resp. at 4–6. Although Plaintiff points to a number of provisions in the Army Field Manual, almost all appear in the introductory chapter, rather than that specifically dealing with the APFT. *Id.* (citing Army Field Manual 21–20 ("FM 21–20"), Chapter 1 at 4–12). For example, Plaintiff cites language from the Introduction, such as "[f]or maximum benefit, soldier's should do strength training three times a week with *48 hours of rest between workouts for any given muscle group.*" *Id.* at 5 (quoting FM 21–20, Chapter 1 at 9) (emphasis added by Plaintiff). This language, however, does not prescribe how to administer the APFT, but instead provides general guidelines for the running of the Army's physical fitness program.

Plaintiff only cites one relevant passage from the chapter specifically outlining the procedures for administering the APFT.

Commanders must strictly control those factors which influence test performance.... They should also ensure the following:

● Soldiers are not tested when fatigued or ill.

● Soldiers do not have tiring duties just before taking the APFT.

● Weather and environmental conditions do not inhibit performance.

● Safety is the first consideration.

FM 21–20, Chapter 14 at 8.

Nevertheless, Plaintiff argues that the Army violated this regulation by administering the APFT to Plaintiff "approximately 60 hours after arriving at NALC having flown from London to Cincinnati, Ohio and on to Seattle, a journey of almost 6000 miles that covered eight time zones over of period of nearly 24 hours." Pl. Resp. at 11. The Army should have been aware of Plaintiff's jet lag, of which fatigue is a principal symptom, and should not have administered the APFT "until eight days after [Plaintiff's] arrival." *Id.* at 11.

Plaintiff has alleged a violation of an APFT regulation and asked the court to take judicial notice of the effects of jet lag, but offered no evidence the test administrator was aware of her situation. Pl. Ex. N. She also offered no evidence that she refused an accommodation. In addition, the factual history of the case suggests her inability to pass the June 16, 2003 APFT was not the result of consequences of jet lag. Nevertheless, Plaintiff was afforded the opportunity to retake the APFT three days later, but again she failed. AR 4 ¶ 7. Plaintiff argues that she failed the second APFT, because she was required to participate in strenuous exercise the previous day. Pl. Resp. at 3. Again, the record does not evidence that she notified anyone administering the APFT that she was fatigued. Plaintiff took the APFT one final time on October 20, 2003, and again failed. AR 5. Therefore, Plaintiff has not established by substantial evidence that FM 21–20 was violated in any manner. Chapter 14 at 8. *Fisher,* 402 F.3d at 1176–1177 ("When there is a question of whether reasonable process has been followed, and whether the decision maker has complied with established procedures, courts will intervene, though only to ensure that the decision is made in the proper manner."). Nor has Plaintiff established that the decision of the ABCMR, to affirm her disenrollment, was arbitrary, capricious, nor an abuse of discretion.

■ As for the remaining arguments advanced by Plaintiff, in the absence of a violation of law or regulation, the court has no authority to review the substance of the Army's decision to dismiss a member for failing to meet the physical requirements. Relevant to this case, the United States Court of Appeals for the Federal Circuit has held that "determining who is fit or unfit to serve in the armed services is not a judicial province." *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983) (holding that the merits of the military's decisions to release a

service member from active duty are non-justiciable). Accordingly, Plaintiff's Motion for Judgment on the Administrative Record is denied.

## IV. CONCLUSION.

For the reasons stated herein, the Government's October 17, 2008 Motion To Dismiss, pursuant to RCFC 12(b)(1) and RCFC 12(b)(6), is denied. Plaintiff's December 18, 2008 Cross–Motion For Judgment On The Administrative Record is denied. The Government's October 17, 2008 Motion For Judgment On The Administrative Record is granted. The Clerk of the United States Court of Federal Claims is directed to enter Judgment in favor of the Government.

**IT IS SO ORDERED.**